(118 App. Div. 181)

## THEDFORD v. HERBERT.

(Supreme Court, Appellate Division, First Department. March 8, 1907.)

1. SALES—CONTRACTS—EVIDENCE—SUFFICIENCY.

Plaintiff orally offered to buy about 1,000 tons of coal a month for nine months. The kind of coal and the terms of payment were not mentioned. The parties intended that the conversation should be followed by a written agreement specifying the details. Plaintiff subsequently wrote a letter to defendant, which recited that defendant, in accordance with the previous conversation, might enter plaintiff's order for about 1,000 tons of a specified kind of coal per month at a specified sum per ton, and that for a few months plaintiff might not be able to take the full monthly quota. Defendant made no reply to the letter. *Held*, that the parties did not enter into a contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 44–48.]

2. SAME.

Plaintiff orally offered to buy about 1,000 tons of coal a month for nine months, and thereafter wrote a letter to defendant which recited that he might enter plaintiff's order for about 1,000 tons of a specified kind of coal for nine months at a specified sum per ton. Defendant did not reply, but, on plaintiff telephoning for coal, delivered a small quantity thereof. *Held* insufficient to show that any coal was delivered under a contract for the sale thereof.

Appeal from Trial Term, New York County.

Action by James Thedford against Henry L. Herbert. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Judgment and order reversed, and new trial ordered.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and SCOTT, JJ.

L. E. Warren, for appellant.
George H. Fletcher, for respondent.

INGRAHAM, J. This action was brought to recover damages sustained by the breach of a verbal contract alleged to have been made on April 30, 1902, for the sale by the defendant of 9,000 tons of coal, 1,000 tons to be delivered in each month until the 1st of February, 1903, at $3.90 per ton. To prove the contract, the plaintiff testified that

he first called on the defendant on April 30, 1902, and had a conversation with the defendant's brother, at which the defendant was present. He said:

"I told him that I came down to conclude the contract for the purchase of coal. * * * I told Mr. Herbert that I would take a thousand tons a month until the 1st of February, 1903, and Mr. Herbert asked me if I would not make it fifteen hundred tons and I told him, 'No,' that a thousand tons was all that I could take care of; and he said, 'Well, all right; when you get back to your office, you confirm that in writing, and we will ship you the coal right along as you want it.' * * * I told him that Mr. Randolph called and offered me this coal, and that he asked me to come down; that they wanted to see me in reference to it, for me to buy the coal myself. The coal was to be delivered at my dock, I stated, respecting the place of delivery. Mr. Herbert said, 'All right.' "

The witness further testified that on the following day he wrote a letter to the defendant, which was introduced in evidence. That letter was as follows:

"New York, May 1st, 1902.
"Messrs. H. L. Herbert & Co.—Gentlemen: In accordance with my conversation with you of yesterday, you may enter my order for about 1,000 tons of broken coal per month for shipment previous to February 1st, 1903, at $3.90 per ton gross tons alongside within limits. For the next three or four months I may not be able to take my full monthly quota, but shall live up to my obligation as nearly as possible. Terms 30 days. I would also remind you that I would be glad to unload any coal you may have for delivery in my locality.
"Yours truly,                                    James Thedford."

The plaintiff testified that he received no answer to this letter; that the defendant shipped him two cargoes of coal, one on the 5th, and the other on the 6th or 7th, of May, which amounted to 560 tons, and for which he paid. The next communication between the parties of which there is any evidence was dated December 3, 1902, and reads as follows:

"New York, Dec. 3d, 1902.
"Messrs. H. L. Herbert & Co.—Gentlemen: When can I expect some furnace coal on my order? From what Mr. Randolph said to me I thought I would have a cargo this week. Please let me know when I will get some, and oblige.
"Yours very truly,                              James Thedford."

The plaintiff testified that he made demands for the delivery of the coal over the telephone about two or three times, without specifying the person with whom he communicated or the time when the demand was made. Upon cross-examination, he testified that this letter, written on May 1, 1902, contained the entire agreement, as he understood it, that he had made on the previous day; that he did not see either of the Herberts from the 30th of April until after he wrote the letter of December 3, 1902, except once, about the 25th of October, at which interview this defendant was not present; that this interview might have been in November, and not in October. This was all the testimony offered by the plaintiff as to the contract, and, after some testimony as to the price of coal during these months, the plaintiff rested. The defendant then moved to dismiss the complaint on several grounds, one of which was that this alleged contract was void under the statute of frauds.

On behalf of the defendant it was proved that the Mr. Randolph mentioned was not, and never had been, in the defendant's employ; that the plaintiff saw the defendant's brother, and stated that he wanted some broken coal, and heard that the defendant would probably have some; that he did not know how or in what quantities he would want it; that, when asked how much he wanted, he stated that he did not know, but he "might want 9,000 tons, or about that," and thought he would want it at about 1,000 tons a month; that the defendant's brother replied that defendant could not let the plaintiff have that amount, but could let him have a little at a time if defendant had the coal, but that it looked very much as though they were going to have trouble with the mines, and he did not know for certain how long they were going to have a supply; that defendant told plaintiff that the price at that time would be $3.90 alongside at his dock; that there was no agreement to let the plaintiff have 1,000 tons a month, commencing in May, 1902, and ending in February, 1903; that some days afterwards the plaintiff called the defendant's office up on the telephone, and wanted to know if he could get a small cargo of broken coal; that it was stated in reply that defendant could get him a load in a couple of days, and defendant did deliver a cargo to the plaintiff; that defendant subsequently shipped at plaintiff's request another cargo of coal, which was delivered on May 7, 1902, and from that time down to December the defendant never heard anything from the plaintiff in reference to wishing more coal delivered. The defendant testified that he never saw the plaintiff, made no contract with him, never had a word of conversation with him and never heard of any conversation between him and Mr. George I. Herbert, defendant's brother, and saw the plaintiff for the first time in court. Mr. Randolph, who was mentioned by the plaintiff in his testimony, was then called as a witness, and stated that he never made or pretended to make any contract on behalf of the defendant; that he called upon the plaintiff and told him that the defendant had some broken coal they would sell at $3.90.

The parties having rested, the defendant renewed his motion to dismiss the complaint upon the same grounds, which motion was denied and defendant excepted. The defendant then asked the court to charge that if the contract alleged is correctly set forth in plaintiff's Exhibit 1, as testified to by the plaintiff, it was void for uncertainty, and the plaintiff could not recover. That request was refused, and defendant excepted. The defendant then asked the court to charge that the contract as testified to by the plaintiff was, in the first instance, void by the statute of frauds. That request was also refused, and the defendant again excepted. The defendant then asked the court to charge that no verdict could be found or predicated upon the ground of defendant's silence in reply to the letter of May 1, 1902. That request was also refused, and the defendant excepted. The jury then found a verdict for the plaintiff for $15,000. In the charge the court instructed the jury that if the defendant "agreed with the plaintiff upon the terms of the sale, and that pursuant to such terms and agreement the plaintiff wrote the letter that has been referred to here as of May 1, 1902, and that the two shipments of coal followed pursuant to that understanding, why then there was a contract between the parties."

It seems to me that there was no enforceable contract. Assuming the plaintiff's testimony to be correct, the first interview with defendant's brother was an offer to purchase about 1,000 tons a month, beginning May 1, 1902, and to continue until February, 1903. The kind or size of coal that was to be delivered and the terms of payment were not mentioned, and it was the intention of the parties that the conversation was to be followed by a written agreement, in which the details were to be specified. It is not disputed but that at this time there was great uncertainty in the coal business on account of a threatened strike of the coal miners, which strike took place a few days after this interview. Accepting the letter of the plaintiff to the defendant, which was written in pursuance of this conversation, and which the plaintiff testified was a correct statement of the conversation as he understood it, it was therein stated that the defendant could enter his order for about 1,000 tons of broken coal per month for shipment previous to February 1, 1903, qualified with the statement that "for the next three or four months I may not be able to take my full monthly quota, but shall live up to my obligation as nearly as possible." The plaintiff then made his offer to make a contract, submitting the terms to the defendant, which, upon acceptance by the defendant, would make a binding contract. There is no statement in the letter that a contract had been made the day before, but that defendant might enter plaintiff's order for the coal. This letter was never accepted, or any contract based upon it made, and it is clear that neither party then considered that there was a binding contract. The subsequent conduct of the parties strongly corroborates this view. From May until December it was almost impossible to get coal of this character in New York in consequence of the miners' strike; the price of coal being largely in excess of that which was discussed by the parties in relation to this order. Yet during all that time there was no demand by the plaintiff on the defendant for any coal, or statement by the plaintiff that a contract was in force. The very indefinite testimony of the plaintiff that he ordered coal several times by telephone is entirely insufficient to prove any demand. It plainly appears from the whole evidence that no express contract, either to deliver or receive coal, was made by this conversation, and the failure of the defendant to accept the plaintiff's offer contained in his letter of May 1, 1902, without a subsequent demand for an answer or for some memorandum from defendant, is strong evidence that it was not understood that there was an actual contract.

Nor do I think the evidence justified a finding that any coal was delivered by the defendant under the conversation of April 30, 1902. The two deliveries of coal made in May were not demanded as a delivery under any contract. There is no evidence that a contract was alluded to when the coal was ordered, or that either party understood that a claim was made by the plaintiff that there was an existing contract.

It follows, therefore, that the verdict of the jury that there was a contract for the sale of this coal was not sustained by the evidence, and that the judgment and order are reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.