JAMES THEDFORD, Appellant, *v.* HENRY L. HERBERT, Respondent.

**Appeal — nonsuit — contract of sale — Statute of Frauds — compliance therewith.**

On reviewing the judgment upon a nonsuit, the plaintiff is entitled to the benefit of any fact that the jury could have found from the evidence and to all inferences warranted thereby.

Plaintiff and defendant met and settled terms of sale " For about 1,000 tons of broken coal per month," which agreement was confirmed by a letter from the purchaser next day, and thereafter, within less than

ten days, 560 tons were delivered and paid for. *Held*, that the purchaser having signed a written memorandum and the seller delivered a portion of the goods, which were accepted and paid for, the contract may be enforced, since a part delivery of personal property subsequent to the sale thereof satisfies the Statute of Frauds.
*Thedford* v. *Herbert*, 123 App. Div. 923, reversed. ·

(Argued February 26, 1909; decided March 16, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 15, 1908, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George H. Fletcher* and *James H. Richards* for appellant. Plaintiff's evidence established the fact that an oral agreement was entered into between the parties on April 30, 1902. (*Vail* v. *Rice*, 5 N. Y. 156; *Mount* v. *Lyon*, 49 N. Y. 552.) The oral agreement became effective as a valid, enforceable contract upon the subsequent delivery of the two cargoes of coal without special order therefor. (L. 1897, ch. 417, § 21; *McKnight* v. *Dunlop*, 5 N. Y. 537; *Van Woert* v. *A. & S. R. R. Co.*, 67 N. Y. 538.)

*L. E. Warren* for respondent. Plaintiff failed to establish a cause of action and failed to establish any valid contract with defendant from which he sustained any damages, or that the minds of the parties ever met, and the defendant's motion to dismiss was properly granted. (*Brauer* v. *O. S. N. Co.*, 77 App. Div. 407; *Thedford* v. *Herbert*, 118 App. Div. 181; *United Press* v. *N. Y. P. Co.*, 164 N. Y. 406; *S. S. Co.* v. *Holbrook*, 101 N. Y. 45.)

EDWARD T. BARTLETT, J. This is the second trial of the action; on the first trial the plaintiff recovered a judgment for $15,000, which was reversed by the Appellate Division

and a new trial ordered. The evidence of the plaintiff on the present trial is substantially the same as upon the first; the complaint was dismissed by the trial judge at the close of plaintiff's proofs on the ground that he was bound by the judgment entered upon the decision of the Appellate Division. This judgment of dismissal was affirmed by the Appellate Division and the plaintiff now appeals to this court.

The plaintiff sues upon a contract wherein the defendant agreed to sell him a certain amount of coal, alleging non-performance and damages suffered. It appears that the parties to this action have long been engaged in the coal business in the city of New York, the defendant as a wholesale, and the plaintiff as a retail, dealer. The plaintiff testified that upon the day preceding the date of the letter hereinafter referred to he called on Mr. Herbert, the defendant, and told him that one Randolph had been to see him in regard to selling coal for the ensuing year, about a thousand tons a month. Plaintiff further testified: "Both of the Mr. Herberts were there, and Mr. G. I. Herbert introduced H. L. Herbert; I had never met the gentleman before. I told them what I came for; Mr. Randolph had been to my office and we concluded arrangements. I told them I could take about one thousand tons a month, and Mr. G. I. asked me if I could not increase that order to fifteen hundred a month. I told him I could not take care of more than a thousand tons a month. He said, ' All right, go back to your office and confirm that in writing.' That was the 30th day of April, 1902. Mr. G. I. Herbert, the defendant's brother, said that. The defendant was present and listened to the conversation. Q. Was any price named? A. $3.90 alongside our dock. Q. Then what was said, if anything, further about the number of thousand ton lots? A. A thousand tons a month from the first of May until the first of February, 1903. Q. Whose language? A. Mr. Herbert's language. Q. Yes? A. He said I could have it. * * * I went back to my office and the next morning wrote them a letter."

(Letter produced and marked in evidence.) (Letter head of James Thedford.)

"*May 1st*, 1902.

"Messrs. H. L. HERBERT & Co.

"GENTLEMEN: In accordance with my conversation with you of yesterday you may enter my order for about one thousand tons of broken coal per month for shipment previous to February 1st, 1903, at 3.90 per ton gross tons alongside within limits. For the next three or four months I may not be able to take my full monthly quota, but shall live up to my obligation as nearly as possible. Terms 30 days. I would also remind you that I would be glad to unload any coal you may have for delivery in my locality.

"Yours truly,

"JAMES THEDFORD."

The witness continued : "This is the letter referred to in our conversation and the letter that I have just said that I wrote confirming our conversation. I had no other communication with the defendant during the next ten days. No one in my office had any share in this business whatever. Two cargoes of 560 tons, I think, of this coal were received by me on the 5th of May and the 7th, either 5th, 6th or the 7th. Within the ten days that I referred to in my testimony. That has been paid for. I never received any other coal referred to in this letter or in our conversation. I was ready and willing at all times to receive the rest of the coal. Q. And to pay for it according to contract? A. And to pay for it."

It appears that very soon after the delivery of this coal under the alleged contract a strike and tie-up occurred in the anthracite coal region. It is proved that this strike, beginning in May, ended in October, 1902. On May 19th, 1902, the defendants, under their regular letter head, issued the following: "Special notice to our customers. In consequence of the strike and the absolute tie-up of the anthracite coal region, we are compelled to inform our customers that commencing Monday, May 19th, there will be an advance of

$1.00 per ton on all sizes of coal, which advance will hold until further notice.   *   *   *   We wish to assure you that we will make every effort to keep our regular customers supplied and at the very lowest price at which any coal can be purchased for ; and trust that you will call upon us for as limited quantity as your actual needs demand.   Very truly yours, H. L. Herbert & Co."

It is conceded that during the continuance of this strike the plaintiff made no demand upon the defendant for the amount of coal called for by the contract, and at the price per ton therein named.   On December 3, 1902, the plaintiff on his business letter head addressed a letter as follows : " Messrs. H. L. Herbert & Co.   Gentlemen : When can I expect some furnace coal on my order ; from what Mr. Randolph said to me I thought I would have a cargo this week.   Please let me know when I will get some.   And oblige, yours very truly, James Thedford."   This letter was not answered.

In this connection the plaintiff testified as follows : " In the trade there is no difference between broken coal referred to in my letter of May 1st and furnace coal referred to in my letter of December 3rd.   They are the same size and the same coal ;   *   *   *   furnace coal is coal that is used for furnaces in houses ; broken coal is exactly the same size as furnace coal ; it has been a term by the wholesale trade ; some of the wholesale companies call it grate coal again.   There is no difference in the meaning.   There is no difference between grate and furnace coal.   They are the same article."

The plaintiff testified generally to the fact that during the continuation of the strike he called on the wholesale companies for the kind of coal in question, but was unable to procure any large amount.   During the continuation of the strike he testified that he purchased a little over 1,700 tons at prices varying from $5.25 to $10.50 per ton.   We have thus entered into the discussion of the evidence somewhat in detail in order to show the reason why, very shortly after the two deliveries under this contract, until December, 1902, there was no effort on the part of the plaintiff to enforce the same.

As we are reviewing the judgment upon a nonsuit, the plaintiff is entitled to the benefit of any fact that the jury could have found from the evidence and to all inferences warranted thereby. (*Costello* v. *Third Ave. R. R. Co.*, 161 N. Y. 317, 320; *McNally* v. *Phœnix Ins. Co.*, 137 N. Y. 389, 394; *Stuber* v. *McIntee*, 142 N. Y. 200, 205.)

The one question of law presented at this time is whether the facts as set forth relating to the original negotiation of the parties and their action under it constitute an enforceable contract under the Statute of Frauds. The statute now in force provides that " Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking; * * *

6. Is a contract for the sale of any goods, chattels or things in action for the price of fifty dollars or more, and the buyer does not accept and receive part of such goods, or the evidences, or some of them, of such things in action; nor at the time, pay any part of the purchase money." (Birdseye's R. S. vol. 2 [3d ed.], page 2634, § 21.)

We have this situation in brief : The parties met on the 30th day of April, 1902, and settled the terms of sale and the seller requested the purchaser to go back to his office and confirm their talk in writing. The purchaser on the next day, May 1st, 1902, writes as requested the letter already quoted. Thereupon, and within from four to six days, 560 tons, consisting of two separate cargoes of coal, are delivered by the defendant upon this contract and duly paid for. In view of the fact that when the parties separated on the 30th of April the proposed letter was to be written, the first delivery was to be made from some shipping point of the defendant to the dock of the plaintiff alongside, this case is reasonably within the provision of the statute where the buyer is required to accept and receive part of the goods, the subject of the contract. In view of the general situation it may be said that both parties acted in the premises with promptness.

It is well settled both on principle and authority that a part delivery of personal property subsequent to the sale thereof satisfies the Statute of Frauds.

It was held in *McKnight* v. *Dunlop* (5 N. Y. 537) that a part delivery several months after the making of a parol contract for the sale of chattels and an acceptance thereof under the agreement renders it binding.    PAIGE, J., stated (p. 542) : "The old Statute of Frauds did not specify the time when either the goods were to be accepted and received, or a part of the purchase money was to be paid.    (1 Rev. L. of 1813, 79, § 15.)    The chapter of frauds, as reported by the revisers, required as well the acceptance and receipt of a part of the goods, as the payment of a part of the purchase money to be at the time of the making of the contract.    The legislature struck out of the subdivision as reported, in relation to the acceptance and receipt of a part of the goods, the words 'at the time ;' which confined the acceptance and receipt of the goods to the time the contract was entered into.    (See Report of Revisers.)    This action of the legislature is a very clear indication of their intention to provide that a contract for the sale of goods for the price of fifty dollars or more should be valid, if a part of the goods sold were accepted and received under and in pursuance of the contract, although after the time of the making of it.    And this is the judicial construction which has been given to the statute."

In *Van Woert* v. *Albany & Susquehanna R. R. Co.* (67 N. Y. 538) the plaintiff contracted by parol, to sell, and the defendant to purchase, one thousand cords of wood, or so much thereof as plaintiff could cut and deliver at a specified price per cord ; no time for performance was fixed.    Plaintiff delivered and received pay for about 322 cords, and had about 200 cords more ready for delivery ; this he commenced to draw and had piled nineteen cords by the side of defendant's road, when he was notified not to bring more, that defendant did not want it ; and it refused to pay for the nineteen cords.    In an action to recover damages, held, that the partial delivery and acceptance answered the requirements of the Statute of

Frauds. (See also *Barkley* v. *Rensselaer & Saratoga R. R. Co.*, 71 N. Y. 205.)

In *Bradley* v. *Wheeler* (44 N. Y. 495) it was held that where the vendors contract merely to move the goods to a specified place, the moment this is done, and the purchaser assumes charge thereof and takes actual possession of any portion, the Statute of Frauds is satisfied.

This court held in *Mason* v. *Decker* (72 N. Y. 595) that where a purchaser signs and delivers to the seller an agreement to buy personal property upon terms satisfactory, and the latter agrees by parol to sell on the terms stated, there is a binding contract which may be enforced against the purchaser.

So was it in the case at bar; the purchaser signed the written memorandum and the seller delivered a portion of the coal, which was accepted and payment made.

The judgment of the Trial Term and the judgment and order of the Appellate Division should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J.; GRAY, VANN, WILLARD BARTLETT and CHASE, JJ., concur; HAIGHT, J., absent.

Judgment reversed, etc.