### THEDFORD v. HERBERT.

o

(Supreme Court, Appellate Division, First Department. December 17, 1909.)

1. APPEAL AND ERROR (§ 1195*)—EFFECT OF DECISION—CONCLUSIVENESS.

A decision of the Court of Appeals holding that the evidence was sufficient to go to the jury is the law of the case on a subsequent trial where the evidence is substantially the same.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4661–4665; Dec. Dig. § 1195.*]

2. SALES (§ 81*)—CONSTRUCTION OF CONTRACT—QUANTITY.

Under a contract for the sale of "about 1,000 tons" of coal per month, with the qualification that the buyer might not be able to take his full monthly quota for the next three or four months, but would live up to his obligations as nearly as possible, the buyer is not bound to accept the full 1,000 tons each month, nor can the seller insist on delivering that amount.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 222, 223; Dec. Dig. § 81.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. SALES (§ 152*)—CONSTRUCTION OF CONTRACT—TIME FOR DELIVERY.

Under a contract for the sale of "about 1,000 tons" of coal per month to be delivered "alongside within limits," with the qualification that the buyer might not be able to take his full monthly quota for three or four months, but would live up to his obligations as nearly as possible, the seller is under no obligation to tender delivery until notified by the buyer when, where, and how much to deliver.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 357; Dec. Dig. § 152.*]

4. SALES (§ 418*)—REMEDY OF BUYER—ACTION FOR FAILURE TO DELIVER—EVIDENCE.

In an action for failure to deliver coal according to contract of sale, evidence of the price paid by plaintiff for other coal to take the place of that not delivered is inadmissible; the market price of other coal being the true test of injury from the breach of contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

5. SALES (§ 418*)—FAILURE TO DELIVER—MEASURE OF BUYER'S RECOVERY.

The difference between the market and contract price at the time for delivery is the measure of the buyer's damages for failure of the seller to deliver coal according to the contract of sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

6. SALES (§ 163*)—CONSTRUCTION OF CONTRACT—QUANTITY.

Under a contract for the sale of "about 1,000 tons" of coal per month, each month stands by itself, and, if delivery during any month be waived, the seller cannot be required to make up the amount by delivering more than 1,000 tons in a succeeding month.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 163.*]

McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by James Thedford against Henry L. Herbert. From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals. Reversed.

See, also, 123 App. Div. 923, 107 N. Y. Supp. 1147.

Argued before INGRAHAM, LAUGHLIN, HOUGHTON, McLAUGHLIN, and SCOTT, JJ.

L. E. Warren, for appellant.
George H. Fletcher, for respondent.

SCOTT, J. On the first trial of this action the plaintiff had a verdict, the judgment upon which was reversed by this court, on the ground that the evidence failed to show that any valid contract had been entered into between the parties. 118 App. Div. 181, 102 N. Y. Supp. 1083. On the second trial the complaint was dismissed. The judgment entered upon the dismissal was reversed by the Court of Appeals, which held that upon plaintiff's evidence the jury might have found that a valid enforceable contract had been made between the parties. 195 N. Y. 63, 87 N. E. 798. To this extent, therefore, the law of the case is settled. Again the plaintiff has recovered a judgment, and we are now called upon to consider questions not heretofore considered. The contract upon which plaintiff relies is claimed to have been made on May 1, 1902, and provides for the sale by de-

fendant to plaintiff of "about 1,000 tons of broken coal per month for shipment previous to February 1st, 1903, at $3.90 per ton gross tons alongside within limits." So far as it was written, it was in the form of a letter by plaintiff requesting defendant to enter an order as above. No written or other acceptance of the order was shown, except that on May 5th and 7th defendant delivered to plaintiff 566 tons of coal. The plaintiff's claim is that this coal was delivered in part fulfillment of the contract, and thus constituted evidence of its acceptance by defendant, and took it out of the statute of frauds. Defendant claims that these were independent sales, having no reference to the alleged contract. On May 1, 1902, there commenced a strike at the coal mines which continued until October 20th of the same year, producing a famine in the coal market which greatly increased the price. During all this time the plaintiff, although he testifies that he was constantly obliged to buy coal of the same character which he says defendant had contracted to deliver him, made no demand upon defendant, and made no remonstrance at defendant's failure to deliver. The plaintiff testified that for three or four weeks before the 12th of May the coal strike was being discussed by the coal men, and the daily press, and that "the newspapers were taking it up pretty stiff." The defendant's printed billheads, in common use in his business, and which were sent to plaintiff for the shipments of May 5th and 7th, contained the notice: "All sales or contracts subject to strikes, accidents or other causes beyond our control." Notwithstanding the verdict of the jury, we find it incredible that under these circumstances the defendant would have made a firm contract at a low price covering the succeeding nine months with the probability of a general strike staring him in the face, and we find it equally incredible that plaintiff, if he really believed that he had such a contract, should never have called upon defendant to deliver coal under it, but should have gone elsewhere, and bought similar coal at much higher prices. The conclusion seems to us to be inevitable that neither party at the time believed or understood that any binding contract existed.

Assuming, however, that the jury was right in finding that there was such a contract, it remains to consider the exceptions taken upon the trial. The contract did not specify the time or place of delivery or the precise amount of coal to be delivered. All that it said about delivery is that it was to be "alongside within limits." What this means is not made evident by the contract itself, and is not explained by the testimony. As to the amount the order is for "about" 1,000 tons per month, with the following qualifications:

"For the next three or four months I may not be able to take my full monthly quota, but shall live up to my obligations as nearly as possible."

Under this contract, the plaintiff was not bound to take the full 1,000 tons per month, and the defendant could not have insisted upon delivering that amount to him. The amount to be taken was distinctly left open to the plaintiff's determination. It was therefore incumbent upon him, if he desired deliveries under his alleged contract, to notify defendant month by month how much he was prepared to receive. This he did not do, and, in fact, made no demand whatever

until December, 1902. Under a contract so indefinite as to the amount to be delivered and the place of delivery, defendant was under no obligation to tender delivery until demand was made upon him, or, at least, he was notified when, where, and how much to deliver.

The court permitted evidence to be given of the price of coal during the whole period of the strike, even permitting plaintiff to testify as to the prices at which he purchased similar coal from other parties. This was erroneous, not only because it covered a period during which defendant had not been called upon to make delivery, but also because the proof should have been limited to the market price of coal. No special damages were alleged, and it was incompetent to show what plaintiff paid in individual cases. The error in the receipt of this evidence was accentuated by the charge, duly excepted to, which under other circumstances might not have been important, that:

"The plaintiff is entitled to the difference between the value to him of the coal contracted for if it had been delivered and the price that the plaintiff was to pay therefor to be ascertained by the jury upon all the facts in the case."

The true rule in such a case is that if plaintiff is entitled to recover anything, it is the difference between the contract price and the market price of similar coal at the times when deliveries should have been made. As we construe the contract, a demand was necessary to put plaintiff in default as to the deliveries to be made in any month. As to any month in which no demand was made the plaintiff cannot recover at all, for the contract was not for 1,000 tons to be delivered in installments, but for 1,000 tons per month. Each month therefore stands by itself, and, if delivery during any month was excused or waived, the defendant could not be compelled to make up the amount by delivering more than 1,000 tons in a succeeding month.

The judgment and order must be reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, LAUGHLIN, and HOUGHTON, JJ., concur.

McLAUGHLIN, J. (dissenting). The Court of Appeals on the former appeal in this case held that a prima facie case was made for the jury and reversed this court, and ordered a new trial. Thedford v. Herbert, 195 N. Y. 63, 87 N. E. 798. The evidence introduced on the last trial was substantially the same as that on the former. The case was therefore properly sent to the jury, and the verdict cannot be said to be against the weight of evidence.

I vote to affirm the judgment, with costs.