### SMITH v. STATE.

(Supreme Court, Appellate Division, Third Department.   September 15, 1915.)

1. CHARITIES ⬄45—LIABILITY FOR TORT—NEGLIGENCE OF PHYSICIAN.

 A hospital maintained as a charitable institution for the care and healing of the sick is free from liability for the negligence of its physicians and surgeons in treating patients.

 [Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 80, 81, 102–104; Dec. Dig. ⬄45.]

⬄For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. STATES ⬤112—LIABILITY FOR TORT—INJURIES TO CONVICT.

A state is free from liability for injuries by negligence to persons forcibly incarcerated in penal institutions and detained there involuntarily.

[Ed. Note.—For other cases, see States, Cent. Dig. § 111; Dec. Dig. ⬤112.]

3. CHARITIES ⬤45—LIABILITY FOR TORT—DEATH OF INSANE PERSON COMMITTED TO ASYLUM.

Where an insane person was committed under statute to a hospital for the insane, maintained as a charity by the state in its governmental capacity, at its expense, to care for unfortunate persons of unsound mind, such commitment being indispensable to his welfare and that of the community, there was an implied waiver of liability of the hospital for negligence of its physicians and attendants in allowing the patient to escape and be drowned; the hospital being located on an island.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 80, 81, 102–104; Dec. Dig. ⬤45.]

4. APPEAL AND ERROR ⬤927—REVIEW—EXTENT—DECISION OF NONSUIT.

On appealing from judgment of nonsuit, the plaintiff is entitled to the benefit of every fact that might have been found from the evidence in her favor, and to any legitimate inference warranted thereby.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 3758, 4024; Dec. Dig. ⬤927.]

5. STATES ⬤112—CLAIMS—PROOF—STATUTE.

Under Code Civ. Proc. § 264, providing that the Board of Claims shall have jurisdiction to determine a private claim against the state, and that in no case shall any liability be implied against the state, and no award be made on any claim, except upon sufficient legal evidence, where claimant, seeking damages for the death of her intestate, an insane person committed to a state hospital for the insane, introduced no evidence showing the absence of proper care by the hospital attendants, but relied on the assumption that the escape by the lunatic was prima facie evidence of negligence on the part of the hospital authorities, claimant could not complain of dismissal, having offered no such evidence as would establish negligence in a court of law or equity, where such a corporation, a charitable hospital, would be liable for the negligence of its servants.

[Ed. Note.—For other cases, see States, Cent. Dig. § 111; Dec. Dig. ⬤112.]

6. CHARITIES ⬤45—PRESUMPTIONS—NEGLIGENCE—ESCAPE OF LUNATIC.

The mere fact that an insane patient escaped from the state hospital for the insane did not raise the presumption of negligence on the part of the hospital authorities in selecting competent attendants, or negligence of the attendants resulting in the escape.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 80, 81, 102–104; Dec. Dig. ⬤45.]

Appeal from Board of Claims.

Claim by Alice E. Smith, as administratrix, against the State of New York. From a determination of the Board of Claims, dismissing the claim, claimant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

John H. Rogan, of New York City, for appellant.

Egburt E. Woodbury, Atty. Gen. (J. P. Coughlin, of Albany, of counsel), for the State.

LYON, J. In June, 1908, claimant's intestate, on the petition of a commissioner of public charities of the city of New York, and the certificate of two duly qualified medical examiners in lunacy, was by an order of a justice of the Supreme Court duly adjudged insane, and committed to the Manhattan State Hospital, an institution maintained by the state for the care and treatment of its poor and indigent insane, on Ward's Island in the city of New York. On or about November 3, 1908, claimant's intestate escaped from said hospital, and about two weeks later his dead body was found in the East River. Thereafter the claimant, who is the widow of deceased, having been appointed administratrix of his estate, presented a claim against the state for the damages which she alleged had been sustained by the widow and the next of kin by reason of the death of her intestate, which she claimed was without fault on his part, but had occurred solely as the result of the negligence of the state, and of the attendants at said hospital, in allowing him to escape. At the close of claimant's evidence, the Board of Claims dismissed the claim, upon the grounds that it did not set forth facts sufficient to constitute a cause of action against the state, that there was no sufficient proof in the case to authorize an award in favor of the claimant, and that there was no proof of neglect on the part of the hospital or of the hospital authorities. From such determination of the Board of Claims, this appeal has been taken.

[1] Any doubt which may have existed as to the freedom from liability for the negligence of its physicians and surgeons in the treatment of patients of a hospital maintained within this state as a charitable institution for the care and healing of the sick must be regarded as having been settled by the decision in Schloendorff v. New York Hospital, 211 N. Y. 125, 105 N. E. 92, 52 L. R. A. (N. S.) 505. In the exhaustive opinion in that case, Judge Cardozo cites many decisions of this and of other jurisdictions sustaining the proposition that such a hospital is not liable for the negligence of its physicians and nurses in the treatment of patients.

The appellant claims, however, that the vital question at issue upon this appeal was not involved in that case, and that there is now presented for the first time to any court the question whether the same rule of exemption of charitable and state institutions from liability for the neglect of its attendants applies to a person of unsound mind, who has been made an involuntary beneficiary of such an institution by order of the court, as applies to a person of sound mind who has voluntarily accepted the benefits of the institution.

[2] That the same exemption of the state from liability applies to persons who have been forcibly incarcerated by public authorities in penal institutions, and there detained against their wills, must be regarded as settled in this state, and in certain other states as well. Corbett v. St. Vincent's Industrial School, 177 N. Y. 16, 68 N. E. 997; Perry v. House of Refuge, 63 Md. 20, 52 Am. Rep. 495; Williamson v. Louisville Industrial School of Reform, 24 S. W. 1065, 15 Ky. Law Rep. 629. It has also been held that a charitable institution was not liable for the death of the infant son of plaintiff, who had

been placed in its care, by reason of death resulting from a fall from a window during the temporary absence from the room of the matron or attendant. Cunningham, Adm'x, v. The Sheltering Arms, 135 App. Div. 178, 119 N. Y. Supp. 1033, distinguished 211 N. Y. 125, 129, 105 N. E. 92, 52 L. R. A. (N. S.) 505.

Directly bearing upon the question in controversy, it was held in Duncan, Adm'r, v. Nebraska Sanatorium & Benevolent Association, 92 Neb. 162, 137 N. W. 1120, 41 L. R. A. (N. S.) 973, Ann. Cas. 1913E, 1127, that a charitable institution, conducting a hospital for benevolent purposes alone, did not necessarily incur liability in damages for the death of an insane person who had committed suicide when alone in a room, though pay for the patient's care and room had been accepted under an oral agreement to keep a nurse in constant attendance; also in Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427, that a charitable institution in which an insane patient is confined cannot be made liable for the death of the patient occasioned by his jumping from a window of the hospital while insane.

[3] It appears from the opinion in each of these cases that the deceased was insane at the time of being committed to the hospital. In the case at bar the deceased was committed as an indigent insane person to a charitable institution maintained by the state in its governmental capacity, at its expense, for the purpose of caring for and treating unfortunate persons of unsound mind. The commitment of the deceased to the State Hospital was a right conferred by statute, and was indispensable both for his welfare and for the welfare of the community, and I think that an implied waiver of liability of the hospital for the negligence of its physicians and attendants may be assumed in such a case, as well as in the case of an indigent sane patient voluntarily committed to a charitable institution.

[4, 5] The claimant invokes the rule, which is well settled, that, this appeal being from a determination and judgment of nonsuit, the appellant is entitled to the benefit of every fact the Board of Claims could have found from the evidence given, and to any legitimate inference in her favor warranted thereby. Thedford v. Herbert, 195 N. Y. 63, 87 N. E. 798; Kirwan v. American Litho. Co., 197 N. Y. 413, 419, 90 N. E. 945, 27 L. R. A. (N. S.) 972, 18 Ann. Cas. 650. But the claimant introduced no evidence whatever showing the absence of proper care upon the part of the hospital attendants to prevent the escape of deceased, but relied upon the assumption that the escape was itself prima facie evidence of negligence upon the part of the hospital authorities, and that it threw upon the state the burden of showing the manner of such escape, and that the escape did not occur through any negligence upon the part of the hospital authorities or attendants.

While section 264 of the Code of Civil Procedure provides that the Board of Claims shall have jurisdiction to hear and determine a private claim against the state, including that by which decedent's death was caused, the section also provides that:

"In no case shall any liability be implied against the state, and no award shall be made on any claim against the state, except upon such legal evidence as would establish liability against an individual or a corporation, in a court of law or equity."

There is not in this record such legal evidence as would establish liability against an individual or a corporation in a court of law or equity, assuming that such individual or corporation could be held liable for the negligence of its servant. The mere fact that the Legislature allowed the claimant to submit the claim to the Board of Claims for determination was not a concession of the validity of the claim. Roberts v. State, 160 N. Y. 217, 54 N. E. 678.

The claim does not allege the existence of suicidal mania upon the part of the deceased, and in answer to the question in the certificate of lunacy furnished to the hospital, "(7) Is the patient violent, dangerous, destructive, excited or depressed, homicidal or suicidal? (If either homicide or suicide has been attempted or threatened, it should be so stated)," the examining physicians stated, "Excited, restless, deluded." There is nothing whatever in the record indicating that the hospital authorities had notice of a suicidal tendency, or in fact that it existed.

[6] We think that the mere fact of the escape does not raise a presumption of negligence upon the part of the hospital authorities in selecting competent attendants, or of negligence upon the part of the attendants resulting in the escape of the deceased.

The determination of the Board of Claims should be affirmed, with costs. All concur.