# N. Y. SUPERIOR COURT.

## THE BROOKLYN OIL REFINERY agt. DANIEL BROWN and others.

Mutuality of *obligation* is not essential to the obligatory power of a *contract.* An agreement under the statute of frauds will bind the party who subscribed it, although there may be no legal remedy at his suit against the other by reason of this latter party having omitted to subscribe it. A subscription by the agent of the party charged is sufficient.

A contract was made as follows: "New York, March 31, 1868. Sold to Sterling Oil Works for account of Mr. D. Brown & Sons, one hundred and sixty thousand (160,000) gallons, crude petroleum, gravity 40–47, at eleven and three-quarters (11¾) cents per gallon. To be delivered to bulk lighter at yard free of expense. Tank measurement; quality and quantity to be accepted at the time of delivery at yard.

" Sellers option during the month of May next, at the rate of forty thousand (40,000) gallons per week through the month.                    D. BROWN & SONS.

" Stamped and executed in presence of, H. C. OHLEN, Broker. Terms cash."

*Held,* that this was binding on the defendants as a contract, and especially so as they had explicitly admitted it in the pleadings in the action.

Under this contract the defendants are obliged to notify the plaintiffs at what " yard" and at what time, they propose to deliver the oil, before any obligation is incumbent on the plaintiffs to send their lighter for the oil.

It is a settled doctrine that the duty of action—of delivery, or demand, or tender, is on him who reserves to himself an option. Therefore the plaintiffs were not bound to pay, or tender payment for the oil, before the defendant had delivered or offered to deliver it. Readiness and willingness on the part of the plaintiffs to pay for the oil, were sufficient, without proof of payment or tender of payment.

This contract obliges the defendants to deliver 40,000 gallons a week, and their option only applies to the *day of the week* on which they might deliver—not the option to deliver the whole 160,000 gallons on the last day of May—which falling on Sunday, they might deliver the whole on the first day of June. They expressly agree to deliver the whole 160,000 gallons in the *month of May,* and a delivery on the first day of *June* would not satisfy their contract.

*Trial term February,* 1870.

MOTION by defendants for a non-suit.

A. S. SULLIVAN and COTTERILL BROTHERS, *counsel for defendants.*

ROGER A. PRYOR and JAMES F. MORGAN, *counsel for plaintiffs.*

McCUNN, J. (*Nisi Prius*)—The action is by a vendee against a vendor, to recover damages for a breach of con tract on the part of the latter in failing to deliver in pur suance of a contract.

The contract is literally as follows:

⊠⊠⊠⊠⊠⊠⊠⊠ Two ten cent stamps, cancelled.     NEW YORK March 31, 1868. Sold to Sterling Oil Works for account Mr. D. Brown & Sons, one hundred and sixty thousand (160,000) gallons, crude petroleum, gravity 40–47, at eleven and three-quarters (11¾) cents per gallon. To be delivered to bulk lighter at yard free of expense. Tank measurement; quality and quantity to be accepted at the time of delivery at yard,

Seller's option during the month of May next, at the rate of forty thousand (40,000) gallons per week through the month.

Accepted.     D. BROWN & SONS.

Stamped and executed in the presence of

H. C. OHLEN, *Broker.*

Terms cash.

The pleadings admit the contract, the authority of the broker to make it in behalf of the defendants, the ratifica- tion of the contract by the defendants, and the non-delivery of the oil in pursuance of the contract. (The assignment of the contract to the plaintiffs is admitted.) The plaintiffs prove that the defendants never delivered nor offered to deliver the oil; that the plaintiffs were ready and willing to receive the oil all during the month of May, 1868; that during that period they were ready and willing to pay for the oil; that on the last day of each week in the month of May they demanded the 40,000 gallons of oil, and offered to pay for the same; and that on the 30th day of the month

of May (the 31st being Sunday) they demanded the whole 160,000 gallons of oil, and then and there offered to pay for the same. On occasion of each demand and offer the defendants neglected or refused to deliver the oil—claiming, first, that they were not bound to deliver any oil before the last day of the month; and, secondly, that they were not bound to deliver or give an order of delivery before they were paid.

The plaintiffs having rested, the defendants move for a non-suit on the following grounds: 1. That there was no contract; and they claim there was no contract, first, for want of mutuality of obligation; and secondly, because the contract is not subscribed so as to satisfy the statute of frauds.

Conceding, for argument, that there is no mutuality of obligation, the obvious answer to the objection is, that mutuality of *obligation* is not essential to the obligatory power of a contract. (*Harvey* agt. *Johnston*, 6 *C. B.*, 295; *Mills* agt. *Blackall*, 11 *C. B.*, 358, 366; *Gibson* agt. *Carruthers*, 8 *M. and W.*, 321; *Marsh* agt. *Wood*, 9 *B. and C.*, 659; *Kearsey* agt. *Cunstains*, 2 *B. and Ald.* 16; *Fairburn* agt. *Eastwood*, 6 *M. and W.*, 679).

Thus the contract of an infant is voidable at his election, but obligatory on the other party. (*Holt* agt. *Ward*, 2 *Strange*, 137). So a guarantor assumes liability, without having any power to compel the party to whom the guaranty is given, to supply the goods. (*Mills* agt. *Blackall*, 11 *Q. B.*, 366; *Westhead* agt. *Sproson*, 6 *H. and N.*, 728).

So an agreement under the statute of frauds will bind the party who subscribed it, although there may be no legal remedy at his suit against the other by reason of this latter party having omitted to subscribe it. (*Laythorp* agt. *Bryant*, 2 *Bing. N. C.*, 735; *Harris* agt. *Shields*, 26 *Wend.* 341; 2 *Caines, R.* 117; 1 *Comyn on Contracts*, 103). A subscription by the agent of the party charged is sufficient (*cases, supra*).

In the present case the defendants explicity admit the contract and its ratification by themselves, and, on familiar principles, they cannot be heard to contradict concessions on the face of the pleadings. (*See complaint, paragraphs second and third; and answer, paragraph second*). The objection of no contract between the parties is therefore untenable.

*Second.* The objection that the plaintiffs have failed to show that they had their lighter ready for the reception of the oil is equally groundless. It is in evidence that by the custom and usage of oil merchants in the city of New York, the vendors under a contract like the present are obliged to notify the buyer at what " yard," and at what time, they propose to deliver the oil, before any obligation is incumbent on the buyer to send his lighter for the oil. And this is in consonance with common sense; for the vendor, having reserved to himself the option when and where to deliver the oil, until he declared that election as to time and place of delivery, the vendee could not know at what time and place to have his lighter ready. The vendors never declared their option, and never notified the vendee when and where they proposed to deliver; and hence the vendees were in no default in not sending their lighter. The case of *Ketchum* agt. *Hiller* (48 *Barb.*, 596,) so far from sustaining the position of the defendants, is fatal to their argument—for there, the option was with the *buyers* when to deliver; and the court properly ruled that the seller was in no default, until, in this particular, the buyer declared his option. This case is a strong illustration of the doctrine that the duty of action, *e. g.*, of delivery, or demand, or tender, is on him who reserves to himself an option. In this case the vendor had an option to deliver any day of the week, and until he notified the vendee of the day on which he proposed to deliver, the latter could not possibly know when to send his lighter, neither could he know *where* to send it, there being half-a-dozen "yards" at which the vendor had the option to deliver.

*Third.* The contention of the defendants, that the plaintiffs should have paid, or tendered payment, for the oil, before the defendants were obliged to deliver, or offer to deliver, is without support in authority or reason. Readiness and willingness on the part of the plaintiffs, to pay for the oil, were sufficient, without proof of payment or tender of payment. (*Rowson et al* agt. *Johnston* 1 *East,* 203; *Waterhouse* agt. *Skinner.* 2 *Bos. and Pull.,* 447; *Bristow* agt. *Waddington,* 5 *B. & P.,* 355; *Wilks* agt. *Atkinson,* 1 *Marsh,* 412; *Levy* agt. *Lord Herbert,* 7 *Taunt.,* 314; *Porter* agt. *Rose,* 12 *Johns.,* 209; *Collonel* agt. *Briggs, Salk.,* 113; *Lancastrine* agt. *Killingsworth, Salk.,* 623; *Morton* agt. *Lamb T.,* 125; 1 *East,* 209; *Norwood* agt. *Gray's Exec., Plowd.,* 180; *Miller* agt. *Drake,* 1 *Caine's Rep.,* 45; *West* agt. *Emmons,* 5 *Johns.,* 181; *Moss* agt. *Stipp,* 3 *Munf.,* 167; 2 *Chitty, Plowd,,* 99; *Bentley* agt. *Dawes, &c.,* 9 *Exch.,* 667; 25 *En. L. & E.,* 540; *Greene* agt. *Reynolds,* 2 *Johns.,* 207; *Topping* agt. *Root,* 5 *Cowen.,* 404; *Clark* agt. *Doles,* 20 *Barb.,* 65. Clearly conclusive, are *Vail* agt. *Rice,* 1 *Selden,* 156; *Bronson* agt. *Winan,* 4 *Selden,* 182; *Coonley* agt. *Anderson,* 1 *Hill,* 522).

Under this contract the defendants reserved to themselves the option when they would deliver; and until they declared that option there was no obligation on the plaintiffs to make tender of payment (*Hilliard on Sales,* 158; *Benjamin on Sales,* 731). Again, under this contract, the plaintiffs were not bound to accept the oil, unless it corresponded with the contract in quality and quantity, and whether it so corresponded, they were to determine at the time of delivery. How then, can it be contended that they were obliged to make a tender of payment in advance, even of an offer of delivery, before they knew the defendants had the oil to deliver, and before they were afforded an opportunity of ascertaining whether the oil to be delivered was in accordance with the contract? The suggestion is not only repugnant to law but is revolting to common sense.

(ROLFE, *B. in Startup* agt, *Macdonald*, 6 *Man. & Gr.*, 610; *Benjamin on Sales*, 508, 510, 516, 519; *Addison on Contracts*, 235; *Isherwood* agt. *Whitmore*, 11 *Mee. & W.*, 347).

*Fourth.* The defendants finally demand a non-suit on the ground that the legal construction and effect of the contract allows them an option to deliver the whole 160,000 gallons of oil on the last day of May; that the last day of May, 1868, being Sunday, they· had a right to deliver on the Monday following, that being the·first day of June. This proposition involves a construction of the contract in controversy, in respect of which I unhesitatingly hold that the contract obliges the defendants to deliver 40,000 gallons a week, and that their option only applies to the day of the week on which they might deliver. They expressly agree to deliver the whole 160,000 gallons in the *month of May*, and a delivery on the first day of *June* would not satisfy their contract. But, the plaintiff, unnecessarily in my view, demanded delivery, and offered payment of the 160,000 gallons on the last secular day of May (30th,) so that even if the defendants' construction be correct, they were in default in not delivering on the 30th of May, 1868.

If the defendants had stipulated to deliver on the 31st of May, 1868, they would have had until the Monday following to perform. (*Salter* agt. *Burt*, 20 *Wend.*, 205); but their contract was absolute to deliver *during the month of May*, and an offer of delivery in *June* would not have satisfied the contract. They were not in default until the last (7th) day of the week, and that was the proper day for the plaintiffs to demand delivery. (*Startup* agt. *Macdonald*, *supra*).

On the first blush I was impressed that this contract required of the defendants a delivery of 40,000 gallons each week during the month of May; and a critical scrutiny of its terms confirms me in that conviction. It is a fundamental canon of construction, that "the construction be made upon the entire instrument; that one part of it do

Brooklyn Oil Refinery agt. Brown.

help to expound another, and that the construction be such as that the whole and every part of it may take effect." (*Sheph. Touch.*, 87; *Rawdon* agt. *Toby*, 11 *How. U. S.*, 511). Upon the principle propounded in these rules, the last words in the contract—*through the month*—show that the delivery of the oil was not to be in a lump on any one day, but was to be distributed through the month, at the rate of 40,000 gallons per week, and if the defendants failed to offer delivery of 40,000 gallons any one week, they, were *pro tanto* in default. (*Hoare* agt. *Rennie*, 5 *H. & N.*, 19).

The motion for a non-suit is denied.