(78 Misc. Rep. 285.)

PEASE OIL CO. v. MONROE COUNTY OIL CO.

(Supreme Court, Special Term, Erie County.    November 29, 1912.)

1. SALES (§ 435*)—SUFFICIENCY—COUNTERCLAIM.
   Where the counterclaim in an action for breach of a contract to purchase gasoline alleged that the plaintiff warranted the gasoline to be of a certain quality and reasonably fit for defendant's purposes, and that defendant, relying upon such warranties, purchased the same, and also that the part of the gasoline which was delivered to defendant was not as warranted, it set out with sufficient particularity the warranty and its breach, and was not demurrable.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1239–1245; Dec. Dig. § 435.*]

2. PLEADING (§ 142*) — SET-OFF AND COUNTERCLAIM (§ 24*)—SUFFICIENCY—"COUNTERCLAIM."
   A "counterclaim" must be a complete cause of action existing in favor of the defendant asserting it, and must be set forth with the same particularity as is required in a complaint for a like cause.

   [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 290, 291, 297, 300; Dec. Dig. § 142;* Set-Off and Counterclaim, Cent. Dig. §§ 39–42; Dec. Dig. § 24.*

   For other definitions, see Words and Phrases, vol. 2, pp. 1645–1650; vol. 8, pp. 7620, 7621.]

3. SALES (§ 260*)—CONTRACT—WARRANTY—MERGER.
   Where a contract for the sale of gasoline merely fixed the price, quantity, place and manner of delivery, and the time and manner of payment, a prior warranty of the quality of the gasoline was not merged therein, but was binding as a collateral agreement; the sale contract not being complete, and the warranty not being inconsistent with it.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 719–726; Dec. Dig. § 260.*]

4. SALES (§ 435*)—REMEDY OF BUYER—COUNTERCLAIM FOR BREACH OF WARRANTY.
   Where gasoline is purchased under an express warranty as to its quality, a counterclaim for damages for breach of warranty in the seller's action for breach of the sale contract need not allege that the defendant returned or offered to return a part of the gasoline which he has received and paid for; the measure of the defendant's damages being the difference between the value of the gasoline if it had corresponded with the warranty and its actual value, and not being dependent upon his having rescinded the contract and returned the gasoline received.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1239–1245; Dec. Dig. § 435.*]

5. SALES (§ 372*)—ACTION FOR PRICE—DEFENSES—BREACH OF WARRANTY.
   In a seller's action for breach of a contract to purchase gasoline, it was no defense that the gasoline was warranted of certain quality, and that the part of the gasoline which was delivered and paid for was not of the quality purchased, unless the defendant was damaged thereby.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. § 1089; Dec. Dig. § 372.*]

6. SALES (§ 435*)—ACTION FOR PRICE—DEFENSES—COUNTERCLAIM.
   Where defendant, in the seller's action for breach of a contract to purchase gasoline, answered that the gasoline was warranted to be of a certain quality, and that the part of it which was delivered and paid

for was not of the quality purchased, such matter constituted a counterclaim for breach of the contract of warranty, and not a defense.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1239–1245; Dec. Dig. § 435.*]

7. PLEADING (§ 217*)—INSUFFICIENT COMPLAINT—DEMURRER TO ANSWER.
Where the plaintiff's complaint is insufficient, demurrers to the defendant's pleadings should be overruled, without regard to the sufficiency of such pleadings; a bad answer being good enough for a bad complaint.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 540–548; Dec. Dig. § 217.*]

8. SALES (§ 153*)—BREACH OF CONTRACT—DEFAULT—SELLER'S RIGHT OF ACTION.
Under a contract of sale of gasoline, providing that the gasoline was to be supplied between the first and last day of the year "in equal monthly shipments * * * in tank cars, f. o. b. refinery at T. * * * or W.," the seller was required to notify the buyer of the time and place at which deliveries would be made, and to be ready, and, if not excused, to tender delivery, at such time and place, before he could place the buyer in default and have a right of action against him for breach of the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 358–366; Dec. Dig. § 153.*]

9. CONTRACTS (§ 335*)—ACTION BY SELLER—SUFFICIENCY OF COMPLAINT.
Where a complaint specifically states what the plaintiff has actually done by way of performance and tender of performance, and this falls short of due performance, it is fatally defective, though it states in general terms that the plaintiff has duly performed and tendered performance of all conditions of the contract on his part to be performed, and though such form of allegation is permissible under Code Civ. Proc. § 533, providing that the performance of conditions precedent may be stated in general terms.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1664–1676; Dec. Dig. § 335.*]

Action by the Pease Oil Company against the Monroe County Oil Company. Demurrers were filed to a counterclaim and a defense in the answer. Demurrer to counterclaim overruled; demurrer to defense sustained.

Walter C. Barker, of Buffalo, for plaintiff.
John A. Van Arsdale, of Buffalo, for defendant.

WOODWARD, J. The questions at issue arise upon demurrers to a counterclaim and a defense in the answer of the defendant. The parties to the action entered into a contract, dated January 14, 1911, Exhibit A with the complaint, for the sale by plaintiff to defendant of 160,000 gallons of 64 gasoline at 8¼ cents a gallon, to be taken in equal monthly shipments of approximately 13,300 gallons per month, and paid for by defendant within 30 days after the date of each invoice. The defendant received and paid for 38,242 gallons between January 25th and April 15th of that year, but, though often demanded, as it is alleged, failed, neglected, and refused to accept, receive, or pay for the remainder, or any more thereof. The plaintiff thereupon, after due notice to defendant, sold at public auction,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from time to time; the balance of gasoline due on said contract for prices less than defendant was to have paid, and now sues for the difference between the contract price and the amount realized from such sales.

[1] The defendant, admitting the incorporation of the parties, the contract of purchase, payment for the 38,242 gallons of gasoline thereunder, and denying the other material allegations of the complaint, sets up a counterclaim to the effect that, prior to the contract sued on, the plaintiff represented and warranted that said gasoline was of 64 specific gravity, free from impurities, and without disagreeable odors, and, knowing that said gasoline was purchased by defendant for immediate sale for fuel and cleaning purposes, plaintiff also represented and warranted that it was reasonably fit and proper for such purposes, and that defendant, relying upon such warranties, purchased the same. Then follows an allegation that the gasoline delivered was not of 64 specific gravity, but greatly inferior thereto, was impure, etc., negativing the terms of the warranty, "and that said gasoline delivered to defendant was not worth to exceed the sum of $2,000; that many of defendant's customers to whom it sold gasoline, upon using the same, because of its inferior quality, impurities, and disagreeable odors, immediately ceased to" make further purchases from defendant, and it has lost said customers and sales of gasoline to them, and the profits to be derived therefrom, in the sum of $3,-000, all to the damage of the defendant in the sum of $4,154.96. The same or like alleged representation, warranty, and breach are set up as a defense to the action, but without any allegation of damages. The defense contains an additional averment to the effect that "as soon as defendant discovered this [that the gasoline delivered was not of the kind or quality purchased], defendant notified the plaintiff and demanded" that plaintiff deliver to defendant the gasoline "as specified in the contract, Exhibit A, which the plaintiff refused to do." The defendant demands judgment for $4,154.96, the amount alleged in the counterclaim. The plaintiff demurs to both the counterclaim and defense as insufficient in law.

[2] A counterclaim must be a complete cause of action existing in favor of the defendant asserting it (Cragin v. Lovell, 88 N. Y. 258), and must be set forth with the same particularity—disclosing an enforceable claim against the plaintiff—as is required in a complaint for a like cause. Weeks v. O'Brien, 25 App. Div. 206, 49 N. Y. Supp. 344. The warranty and its breach in this case are set forth, as it seems, with sufficient particularity. A general averment that the vendor warranted the articles to be of a good quality seems to be a sufficient averment of the warranty (Hoe v. Sanborn, 21 N. Y. 552, 555, 78 Am. Dec. 163); or an averment that he warranted and represented the goods to be of a certain quality (Lindsay v. Mulqueen, 26 Hun, 485; Burch v. Spencer, 15 Hun, 504). It is settled, in fact, that upon the sale of personal property, where inspection of it is not had or possible at the time, and the seller knows the quality and the buyer does not, as may reasonably be supposed in this case, the representations made by the seller as to the quality are to be regarded as a war-

ranty. Egbert v. Hanford Produce Co., 92 App. Div. 252, 256, 86 N. Y. Supp. 1118, and cases there cited. Be that as it may, both representations and a warranty are expressly alleged, and a breach of both, in this case. These facts, taken as true on demurrer, and standing alone, constitute a cause of action in favor of the defendant against the plaintiff—a contract and its breach—and for which the defendant is entitled to recover nominal damages at least (Devendorf v. Wert, 42 Barb. 227; Nilsson v. De Haven, 47 App. Div. 537, 541, 62 N. Y. Supp. 506), without reference to the sufficiency of the other allegations of damage.

[3] It is claimed, however, that the alleged warranty, having been made prior to the contract of sale, was merged in it, and Stowell's Case, 163 N. Y. 304, 57 N. E. 480, is cited in support of the claim. The written contract there between the defendant, an insurance company, and its general agent, not only covered the general subject of his employment, but contained an express provision that its termination, no matter which of the parties brought it about, "should be without any liability on the part of the insurance company beyond the commissions actually earned at the close of the said agency." "This was the deliberate engagement of the parties," said the court, "and by it they attempted to close the door against all possible claims for services or damages, and to absolutely destroy all opportunity for controversy." Yet the agent sought to prove on the trial an oral agreement, alleged to have been made prior to and at the time of the written contract, and imposing an additional liability upon the company. A decision upon that state of facts has little or no application here. The question there was not whether admitted facts constitute a cause of action, or, as in this case, a counterclaim, but as to the admissibility of evidence, over objection at the trial, of an oral agreement varying the terms of the written contract. This, it was held, could not be done, because of the familiar general rule that, when an agreement is reduced to writing, it as between the parties merges all prior and contemporaneous negotiations upon the subject, and that oral evidence is not admissible to vary, explain, or contradict its terms; for the writing is conclusively presumed to contain the whole engagement of the parties.

But there are several exceptions to that rule mentioned in that and other cases (Vaughn Machine Co. v. Lighthouse, 64 App. Div. 138, 71 N. Y. Supp. 799; Chapin v. Dobson, 78 N. Y. 74, 34 Am. Rep. 512), and one of which is to the effect that an independent prior or contemporaneous collateral agreement is not merged and may be alleged and proved. This exception is apparently as well established as the rule itself. Two things are essential to bring this or any case within that exception:

"(1) The writing must not appear upon inspection to be a complete contract, * * * and designed to express the whole arrangement between the parties. * * * (2) The parol evidence must be consistent with and not contradictory of the written instrument." Thomas et al. v. Scutt, 127 N. Y. 133, 138, 27 N. E. 961.

As clearly as the exception and its essentials are thus stated in the books, it is not always easy to determine whether a given case is within the exception. A precedent may serve that purpose in this case. In Chapin v. Dobson, 78 N. Y. 74, 34 Am. Rep. 512, the contract to furnish certain machines "fixed the price at which they were to be furnished, the number, the place and manner of delivery, and the time and manner of payment"—an apparently complete agreement. Yet it was held admissible for defendant to prove a guaranty by the plaintiff, at the same time, "that the machines should be so made that they would do the defendant's work satisfactorily." The writing described the machines as "first breaker feeders" of certain dimensions. The court said:

"How they should work, and whether well or ill, is not stated. If it had called for a machine to satisfy a required purpose, of which the plaintiffs had notice and which they had undertaken to supply, they would have been bound as a condition of the contract to supply an article reasonably fit for the purpose, and a warranty would have been implied that it was so. * * * The guaranty as made does not contravene the written contract, and is not inconsistent with it. If the fitness of the machine is implied, the guaranty is in harmony with it and adds nothing; if it is not implied, the paper contains no declaration that the machines shall be taken with all faults and insufficiencies, or at the defendant's risk. The parol evidence, therefore, contradicts no term of the writing nor varies it. The written contract and the guaranty do not relate to the same subject-matter. The contract is limited to a particular machine as such. It is one thing to agree to sell or furnish machines of a specific kind, as of such a patent, or of a particular designation, and another thing to undertake that they shall operate in a particular manner, or with a certain effect, or, as in this case, that they shall do the buyer's work satisfactorily. The first would be performed by the delivery of machines answering the description or the specifications of the patent; and whether they did, or not, conform thereto would be the only inquiry. As to the other, it in no respect touches the first, nor does it operate as a defeasance, but leaves it valid and to be performed, and the consequences of a breach of the guaranty are a recoupment or abatement of damages in favor of the defendant; and this is so, whether the contracts are in writing or not, for the guaranty is valid, although not in writing, and the same rule must apply, for in either case the relation of the guaranty to the contract would be the same."

It was held that the guaranty was collateral to the written contract, and that evidence of the guaranty and its breach was admissible. That decision has been followed and applied in many cases, of which the following are a few: Schmittler v. Simon, 114 N. Y. 176, 21 N. E. 162, 11 Am. St. Rep. 621; Routledge v. Worthington Co., 119 N. Y. 592, 23 N. E. 1111; B. & S. Co. v. S. R. P. & P. Co., 135 N. Y. 626, 32 N. E. 132; Cooper v. Payne, 186 N. Y. 334, 78 N. E. 1076; Vaughn Machine Co. v. Lighthouse, supra—and must be, it seems, held controlling in the one at bar.

The contract of sale in that case fixed, as we have seen, the price at which the machines were to be furnished, the number, the place and manner of delivery, and the time and manner of payment. The contract of sale in this case fixes the very same things, neither more nor less—the price at which the gasoline was to be supplied, the quantity, the place and manner of delivery, and the time and manner of payment. The contract there described or specified the articles

sold as "first breaker feeders." This one describes or specifies the article sold as "64 gasoline." It was held competent in that case for the defendant to allege and prove that the plaintiff, at the time of sale, guaranteed that the machines "would do the defendant's work satisfactorily," and a breach of the guaranty in recoupment or abatement of plaintiff's claim for damages on the contract.

Such being the case, it clearly follows, as it seems to me, that the defendant here must be allowed to allege the facts, admitted as they are by the demurrer, that the plaintiff did represent and warrant that the gasoline was 64 specific gravity, free from impurities and disagreeable odors, and, further, that the plaintiff, knowing that the gasoline was being purchased for certain purposes, represented and warranted that it was reasonably fit for such purposes, and that defendant, relying upon such warranties, purchased the same.

[4] It is also claimed that the counterclaim is fatally defective for failure to allege that defendant returned or offered to return the gasoline. But such is not the case if an *express* warranty exists. It was held long since "at least doubtful whether, in any case, a purchaser of goods *has a right* to rescind the sale and return the goods on account of the breach of the warranty, where there is no fraud and no agreement that they shall or may be returned. * * * But, whether the right to rescind and return the goods may or may not exist in the special case of a sale by sample, it is well settled that the purchaser is not bound to exercise it. He may, in all cases, unless he has specially agreed otherwise, affirm the sale and bring his action for damages on the warranty. So, in an action against him for the price of the goods, he has the same right by way of recoupment." Muller v. Eno, 14 N. Y. 597; Day et al. v. Pool et al., 52 N. Y. 416, 421, 11 Am. Rep. 719; Fairbank Canning Co. v. Metzger et al., 118 N. Y. 260, 268, 23 N. E. 372, 16 Am. St. Rep. 753. The counterclaim under the Code takes the place of recoupment and set-off (Vassear v. Livingston, 13 N. Y. 248); the measure of damages being the difference between the value of the goods if they had corresponded with the warranty and their actual value (Hooper v. Story, 155 N. Y. 171, 175, 49 N. E. 773; Isaacs v. Wannamaker, 189 N. Y. 122, 124, 81 N. E. 763; New York Steam Co. v. Foundation Co., 195 N. Y. 43, 87 N. E. 765, 21 L. R. A. [N. S.] 470). The demurrer to the counterclaim must, therefore, be overruled.

[5] The demurrer to the *defense*, however, must be sustained. The warranty therein alleged and its breach are matters of no importance, nor is the alleged fact of notice to the plaintiff that the gasoline delivered was not of the kind or quality purchased, unless the defendant were damaged as a result thereof. No such damage is alleged, and the defense is, therefore, entirely insufficient. Nash v. Weidenfeld, 41 App. Div. 511, 58 N. Y. Supp. 609.

[6] Besides, the matter set up is not a *defense* to the action, but is a counterclaim for a breach of the contract of warranty. Id.; Norton v. Dreyfuss, 106 N. Y. 90, 12 N. E. 428.

[7] Moreover, it is doubtful whether the complaint is sufficient, in which case, if insufficient, the demurrers should be overruled, with-

out regard to the sufficiency of the counterclaim or defense. The rule is that a demurrer runs through the entire record, reaching back to the first fatally defective pleading, because, as it is sometimes said, "he who does not so plead as to invite an issue cannot compel his adversary to so plead as to accept it," or, in another form, that "a bad answer is good enough for a bad complaint." Clark v. Poor, 73 Hun, 143, 25 N. Y. Supp. 908; Savage v. City of Buffalo, 50 App. Div. 136, 63 N. Y. Supp. 941; Holmes v. Northern Pacific R. Co., 65 App. Div. 49, 72 N. Y. Supp. 476; Id., on a subsequent demurrer, 36 Misc. Rep. 266, 73 N. Y. Supp. 332; Baxter v. McDonnell, 154 N. Y. 432, 48 N. E. 816. "This rule is not a technical one," as was said in Savage's Case, supra. "It necessarily attaches to every system; for when the court is advised of any substantial error or defect in a pleading—one that is not waived by pleading to the merits and that will render a verdict nugatory which may be found upon it—it will go no further, and will require the defective pleading to be amended, or will render judgment against the party thus at fault." It is even said that, on demurrer to a defense as insufficient, "an objection to the complaint on that ground is, if well taken, not only a complete answer to the demurrer, but should result in the dismissal of the complaint." Heath Dry Gas Co. v. Hurd, 124 App. Div. 68, 108 N. Y. Supp. 410; People v. Booth et al., 32 N. Y. 397.

[8] The plaintiff agreed by the contract of sale to supply to the defendant 160,000 gallons of 64 gasoline "between the dates of January 1, 1911, and December 1, 1911, * * * in equal monthly shipments, * * * in tank cars, f. o. b. refinery at Titusville, Pennsylvania, or Warren, Pennsylvania." The defendant was to receive and pay 8¼ cents a gallon for the gasoline within 30 days after the date of each invoice. The rules of law, often perplexing, applicable to the subjects of precedent and concurrent conditions in contracts, are somewhat involved, and there is very meager information in this case on which to judge of the subject. It is certain that a right of action in either party must arise out of the default of the other; that the one who would sue must first put the other in default; that he must perform, or be ready to, and tender performance of precedent and concurrent conditions on his part.

The gasoline was to be supplied between the first and the last of the year "in equal monthly shipments * * * in tank cars, f. o. b. refinery at Titusville, * * * or Warren." Whose duty was it to take the first step in the performance of the agreement? It is a general rule that, in a contract for the "sale and delivery of goods 'free on board' vessel, the seller is under no obligation to act until the buyer names the ship to which the delivery is to be made; for, until he knows that, the seller could not put the goods on board." Armitage v. Insole, 14 Q. B. 728; Walton v. Black, 5 Houst. (Del.) 149; Dwight et al. v. Eckert, 117 Pa. 490, 12 Atl. 32; Rogers & Rogers v. Van Hoesen et al., 12 Johns. 221. "But," as it is said, "where either the time or the place of delivery is by the nature of the contract, or by its express provisions, at the seller's option, a different rule must necessarily prevail. In such case the seller becomes the

first actor, and it is his duty to give notice of the time or place, or both, as the case may be, at which it is proposed to deliver the goods, before any obligation rests upon the buyer to name the ship, upon board of which they are to be delivered; for, until the seller declares his election as to time and place, the buyer could not know when or where to have the vessel ready." Dwight et al. v. Eckert, 117 Pa. 490, 12 Atl. 32; Oil Refinery v. Brown, 38 How. Prac. 444; Rogers & Rogers v. Van Hoesen, 12 Johns. 221.

In the Dwight Case, supra, the plaintiff, in November, 1879, sold to the defendant a quantity of steel blooms to be delivered f. o. b. vessel at either of two foreign ports, Rotterdam or Antwerp, "during the months of December, January, February, and March, then next ensuing." The court held that:

"Upon notice from time to time that the blooms were in readiness, it was the duty of the buyer to name the vessel. * * * It is unreasonable to suppose that it was in contemplation of the parties that the buyer should provide vessels and name them to the seller from time to time during the four months specified for delivery, upon an uncertainty; for he could not know when the seller might have the blooms ready, and he certainly was not obliged to hold the vessels in readiness at all times during the entire period in mere anticipation of deliveries which might happen to be made. He was obliged, however, to hold himself in readiness to accept the blooms and to name the ship on reasonable notice."

In Rogers & Rogers v. Van Hoesen, 12 Johns. 221, the defendants agreed to take, at certain prices, all the herring which might be caught in plaintiffs' net for the season, to be delivered "at the *Fly* or at the dock at *Catskill.*" The plaintiffs caught a quantity of fish at the *Fly*, and, the defendants not being there to receive them, they were carried to the dock at Catskill, and there kept until they spoiled, but no notice had been given to the defendants of the fish being there. The court held that, "the place of delivery being at the option of the plaintiffs, they were bound to give notice to the defendants of such place, and that the fish were ready to be delivered," and that, no such notice having been given, plaintiffs could not recover.

In Brooklyn Oil Refinery v. Brown et al., 38 How. Prac. 444, the plaintiff sold to defendants 160,000 gallons crude petroleum, gravity 40–47, at a certain price, to be delivered to bulk lighter at yard free of expense, "*seller's option* during the month of May next (1868) at the rate of 40,000 gallons per week through the month." It was, of course, held in that case that the seller was obliged to notify the buyer at what yard and at what time it proposed to deliver the oil, before any obligation was incumbent on the buyers to send their lighter for the oil. Likewise, where the sellers were to deliver the goods "alongside of buyers' vessel, at the rate of 500 barrels per month, from November to April, inclusive, *seller's option,* free of expense to buyers, provided name of vessel and number of pier are made known before arrival of goods," it was held the duty of the vendees to inform the vendors of the name of the vessel and the place at which it would be ready to receive delivery, before the vendors were bound to deliver.

The courts could not have held otherwise than as they did in the last two cases. But I am inclined to think, by reason of the cases

previously cited and the nature of the present contract, that the time or day of delivery in each month, as well as the place—whether at Titusville or Warren—was at the option of the plaintiff; that it was at liberty to make a monthly delivery at any time within the month and at either of these places. If that view is correct, then it was the duty of the plaintiff to notify the defendant of the time and place at which deliveries would be made, and to be ready and, if not excused, to tender delivery at such time and place; otherwise, the defendant would not be put in default, nor the plaintiff have a right of action. If it was alleged, which it is not, that the defendant gave shipping directions for the gasoline which it had received, that fact might be taken as a construction of the contract by the parties themselves, and lead to a different conclusion.

The fact, as alleged, that defendant, "though often demanded, failed, neglected, and refused to give shipping instructions for or accept or receive or pay for gasoline," did not put the defendant in default, if it were not its duty to give such instructions, and no gasoline of the kind purchased was tendered at the time and place specified in the contract. Nor would such a demand on the part of the plaintiff put the defendant in default if the plaintiff were not ready and willing to make the delivery, and of which the complaint contains no allegation. The plaintiff must have performed, or been ready and willing to perform, and, unless excused, tendered performance on its part, before it can complain of nonperformance on the part of defendant. Of this there can be no dispute.

[9] It is alleged, however, that the plaintiff duly performed and tendered performance of all conditions of said contract on its part to be performed. This form of allegation is permissible under the Code of Civil Procedure (section 533). But that general allegation would hardly save a complaint where, as in this case, the plaintiff sets forth what he actually did do, if that falls short of due performance. Dalzell v. Fahey's Watch Case Co., 17 N. Y. Supp. 365; Chatterton v. Fisk, 1 Abb. N. C. 88; Mills v. Gould, 1 Abb. N. C. 93. The complaint in each of the last two cases contained the formal allegation that the plaintiffs duly performed, etc.; but the complaints were held insufficient on demurrer, for the omission to allege that the plaintiffs were ready to perform and tendered performance. This complaint appears to be fatally defective for the like omission.

Demurrer to counterclaim overruled, and sustained as to the defense, without costs.