(163 App. Div. 184)

BRITISH ALUMINUM CO., Limited, v. TREFTS.   (No. 5833.)

(Supreme Court, Appellate Division, First Department.   June 5, 1914.)

SALES (§ 371*)—EXECUTORY CONTRACT—BREACH—TENDER OF DELIVERY.

Plaintiff contracted to sell to defendant 25 tons ingot aluminum, to be delivered f. o. b. New York, "shipment as specified by buyers between October, 1910, and April, 1911." The clause relating to shipment was subsequently modified by substituting December 31, for April, 1911, as the final date of delivery. Before such final date defendant had accepted and paid for 13 tons, but did not request any further shipments nor call for further deliveries, whereupon plaintiff, without tendering further delivery, brought suit for breach of contract, after the time for final delivery had expired. *Held*, that the contract was executory only, and that after the expiration of the date of final delivery plaintiff was bound to tender delivery as a condition precedent to his right to recover for breach of contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1086–1088; Dec. Dig. § 371.*]

Ingraham, P. J., and Hotchkiss, J., dissenting.

Appeal from Trial Term, New York County.

Action by British Aluminum Company, Limited, against George W. Trefts, as surviving partner of the copartnership of Farrar & Trefts. From a judgment for plaintiff, defendant Trefts appeals. Reversed and dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Meredict Potter, of Buffalo, for appellant.

Robert Louis Hoguet, of New York City (Randolph W. Childs, of New York City, on the brief), for respondent.

LAUGHLIN, J.   The plaintiff is a foreign corporation, and brings this action as vendor of aluminum to recover of the vendee the difference between the contract price and the market price at the time and place of delivery. The action is based upon a contract in writing, made between the plaintiff by its agents and the defendants on the 22d day of September, 1910, by which the plaintiff through its agents agreed to sell 25 tons, long ton weight, British ingot aluminum, guaranteed 98 to 99 per cent. pure, at 22⅜ cents per pound. The only provisions of the contract with respect to the place and manner of de-

livery are as follows: "Delivery, f. o. b. New York;" and the only provisions with respect to time of delivery follow immediately, and are: "Shipment. As specified by buyers between October, 1910, and April, 1911."

The next contract provides that the payments shall be in cash in New York funds 15 days "from date of invoice." It is further provided that the price was based on the then existing tariff, and that in the event of a change in the tariff it should be modified accordingly; and that each delivery should be considered a separate contract, and that "strikes, lockouts, differences with workmen, accidents to machinery, delays en route or other contingencies" beyond the control of the vendor should be "sufficient to excuse for any delay traceable to these causes." The clause relating to "shipment" was subsequently modified by substituting the 31st day of December, 1911, for April, 1911, as the final date for delivery. It was stipulated that between the 26th of December, 1910, and the 13th of April, 1911, the plaintiff, pursuant to the contract and at the request of the defendant, duly delivered to defendant 12 long tons of said aluminum, and that the same was duly accepted and paid for in full. The defendant in no manner requested the plaintiff to ship the remaining 13 tons of aluminum, and the plaintiff neither delivered nor tendered delivery of the same, nor did it request defendant for any shipping directions or give defendant notice that it was ready to deliver or call upon defendant to take the aluminum; but it was stipulated that at all times prior to and including the 1st day of January, 1912:

"The plaintiff was ready, able and willing to deliver to the defendant thirteen long tons of aluminum of the kind and character mentioned in the contract."

The plaintiff has recovered the difference between the contract price and the market price—18 cents per pound—of the aluminum at the city of New York on or about the 1st day of January, 1912; the market price at that time being 18 cents per pound. The evidence *also* showed that the court found that the plaintiff was ready, willing, and able to deliver the 13 tons of aluminum to the defendant between the 31st day of December, 1911, and the month of November, 1912; that on the 3d day of January, 1912, plaintiff commenced an action in the Supreme Court of this state against the defendant to recover the *purchase price,* as fixed by the contract, of the remaining 13 tons of aluminum; that issue was joined therein on the 9th of February, 1912, and the cause was on the calendar for trial in the month of June, 1912, and so remained until the 18th of November of that year, when it was voluntarily discontinued; that in the month of May, 1912, the market price of aluminum in the city of New York began to advance above 18 cents per pound, and continued to advance until the months of October and November, when it reached 26 or 27 cents per pound.

In the view I take of this case it is not necessary to consider whether the plaintiff, by bringing the action on the contract for the purchase price, made an irrevocable election of remedies. I am of opinion that the plaintiff was not entitled to recover without alleging and proving delivery, or a tender of delivery, of the aluminum, or a waiver there-

of, or facts excusing tender of delivery. It is quite clear, I think, that this was an executory contract, and that title to the aluminum did not pass to the defendant at the time the contract was made, and would only pass by delivery (Wilson v. Empire Daily Salt Co., 50 App. Div. 114, 63 N. Y. Supp. 565, and cases cited), and it has been so regarded by the parties. Of course delivery or tender of delivery might have been waived or excused, but there is no allegation or proof that it was. It has been held that tender of delivery is excused where it is prevented by the action of the vendee, or by his failure to give necessary instructions to enable the vendor to tender delivery, as where neither the place nor manner of delivery is specified, or by his repudiation of the contract. Duryea v. Bonnell, 18 App. Div. 151, 45 N. Y. Supp. 435; Hunter v. Wetsell, 84 N. Y. 549, 38 Am. Rep. 544; Thedford v. Herbert, 135 App. Div. 174, 119 N. Y. Supp. 1025; Wester v. Casein Co. of America, 206 N. Y. 506, 100 N. E. 488; Weill v. American Metal Co., 182 Ill. 128, 54 N. E. 1050; Kingman Co. v. Hanna Wagon Co., 176 Ill. 545, 52 N. E. 328.

It is contended on the part of the respondent that the plaintiff was under no obligation to deliver or to tender delivery until the defendant specified a time for delivery of the remaining 13 tons of aluminum, which concededly he never did. The parties did not undertake that the vendor need not ship the goods until it received shipping directions from the vendee. The provisions with respect to shipments earlier than the final date were for the benefit of the vendee, and he was required, not to give shipping instructions essential to enable the vendor to make a delivery, but to specify *dates for delivery* in so far as he might desire delivery before the 31st day of December, 1911. The vendor had the right, and I think that it was its duty, if it intended to hold defendant, to deliver or tender delivery of the remaining 13 tons of aluminum on the 31st day of December, 1911, for the legal effect of the contract was to call for delivery thereof on that day. See Sousely v. Baines, Adm'r, 73 Ky. (10 Bush.) 87; Chandler v. Robertson, 39 Ky. (9 Dana) 291. The vendor needed no shipping instructions to enable it to deliver the aluminum, which was to be consigned to the defendant at Buffalo, and to be delivered f. o. b. at the city of New York; and if it did, it should have asked for them if it desired to perform and to put the vendee in default. See Gordon Malting Co. v. Bartels Brewing Co., 206 N. Y. 528, 100 N. E. 457, 461. The contract merely gave the vendee the right to require delivery of part or all the aluminum prior to the final date of delivery. In so far as delivery was not required to be made before that date, the vendor, if it desired the benefits of its contract, was at liberty, without awaiting a request from the vendee, to deliver the aluminum f. o. b. at New York City, consigned to the vendee at Buffalo, and the failure of the vendee to demand delivery did not, in my opinion, excuse the vendor from so delivering or tendering delivery of the remaining 13 tons. The only theory upon which this recovery could be sustained is that the vendee was guilty of a breach of the contract, not by refusing to accept delivery of goods duly tendered or to pay therefor within the period prescribed by the contract, but by failing to notify the vendor that he desired it

to ship the undelivered aluminum on or before the final date of delivery specified in the contract, or, in other words, on the theory that the vendee was guilty of a breach of the contract by not calling upon the vendor to perform. It is perfectly clear that the plaintiff could not maintain an action to recover the contract price of the aluminum on an allegation of performance on its part, for it was not entitled to recover the purchase price until 15 days after the date of the invoice by which delivery was to be made, and no facts are alleged or proved waiving or excusing delivery. It is a well-settled general rule of law that the vendor of personal property cannot put the vendee in default and recover for a breach of the contract without tendering delivery and alleging and proving it. Lester v. Jewett, 11 N. Y. 453; Delaware Trust Co. v. Calm, 195 N. Y. 231, 88 N. E. 53; Gross v. Ajello, 132 App. Div. 25, 116 N. Y. Supp. 380; Hendrickson v. Callan, 147 App. Div. 480, 131 N. Y. Supp. 839, affirmed 210 N. Y. 543, 103 N. E. 1124; Pease Oil Co. v. Monroe Co. Oil Co., 78 Misc. Rep. 285, 138 N. Y. Supp. 177. The learned counsel for respondent appears to concede that, if his client were seeking to recover the purchase price of the aluminum, it would be necessary to show delivery or tender of delivery; but he seems to think that such allegation and proof are unnecessary because this is an action for damages for a breach of the contract. On the facts of this case, I am of opinion that a recovery cannot be had on either theory without such allegation and proof.. It is unnecessary to express any opinion on the question as to whether tender by the vendor after the 31st of December, 1911, would be in time (see Hendrickson v. Callan, supra), for there is no allegation or proof of tender at any time prior to the commencement of the action.

It follows, therefore, that the judgment should be reversed, with costs to appellant, and the decision modified by eliminating therefrom the conclusions of law and substituting therefor a conclusion of law to the effect that the plaintiff has failed to establish a cause of action, and that the defendant is entitled to judgment dismissing the complaint upon the merits, with costs, and granting judgment thereon as amended accordingly.

McLAUGHLIN and DOWLING, JJ., concur.

HOTCHKISS, J. (dissenting). I understand the general rule to be that where the parties to a contract are severally under dependent obligations to concurrently do some act, as, for instance, where delivery and payment are to be cotemporaneous, neither party can put the other in default without tender, offer, or notice of readiness to perform. But, as Professor Williston expresses it:

"Where by the terms of the contract the defendant has not performed some condition precedent, it is enough for the plaintiff to allege that he was ready and willing; he need do nothing actively until the defendant has performed his prior obligation." Williston on Sales, § 448.

See, also, Id., 457; Hunter v. Wetsell, 84 N. Y. 549, 38 Am. Rep. 544. Commonly these conditions precedent occur where the buyer is

first to give instructions as to size, quality, or quantity, or directions where or how to ship. See 35 Cyc. 250, tit. Sales.

I think the principle governing these situations applies with equal force to a case where, as here, the buyer is, within a certain fixed period, to specify the particular time *when* shipment is to be made by the seller. Cases where delivery is to be made within a reasonable time, on request of the buyer (Jones v. Gibbons [1853] 8 Exchec. 920), or within a time not definitely fixed, on similar request (Cook v. Ferral, 13 Wend. 285), in which circumstances it is held that to put the buyer in default, the seller must make tender or give notice of desire to perform, are clearly distinguishable from the present (see Coonley v. Anderson, 1 Hill, 523). Decided cases exactly in point are singularly few, but Weymouth v. Goodwin, 105 Me. 510, 75 Atl. 61, and Posey v. Scales, 55 Ind. 282, seem to cover the question. To the same effect are West v. Emmons, 5 Johns. 179; Woolner v. Hill, 93 N. Y. 576; Vail v. Rice, 5 N. Y. 155; Coonley v. Anderson, 1 Hill, 519; In re Millbourne Mills Co. (D. C.) 165 Fed. 109; Colvin v. Weedman, 50 Ill. 311. I find nothing in the two Kentucky cases cited in the majority opinion which militates against these views. They both arose on a question of pleading, and, as I read them, are authority for nothing more than that the seller, in a case like the present, must allege a readiness and willingness to perform, a proposition to which I fully assent. Gordon Malting Co. v. Bartels Brewing Co., 206 N. Y. 528, 541, 100 N. E. 457, 461, held that the buyer, having failed to give shipping directions, although requested by the seller so to do, was clearly in default. It did not hold that the buyer would not have been similarly in default had no such request been given.

I think the judgment was right, and should be affirmed.

INGRAHAM, P. J., concurs.