Dowling, J.:
The complaint herein contains two causes of action. The first cause of action sets forth that plaintiff and defendant on or about July 10, 1919, entered into a written agreement, a copy of which is annexed to the complaint, whereby the plaintiff sold to the defendant and the defendant bought of the plaintiff 500 barrels of pure linseed oil', fair average quality, to be packed in the usual barrels, suitable for export, containing about fifty gallons each, whereof 250 barrels were to be shipped during August, 1919, and the remaining 250 barrels during September, 1919. The provision as to price was as follows: “ Two dollars and twelve cents ($2.12) per gallon, basis raw; usual differential of 2c per gal. additional for single boiled and 3c per gal. for double boiled oil. Terms F. A. S. New York. Net cash, in exchange for dock receipt. Draw-back papers to be delivered to the sellers when received.” Under the head of “ remarks,” the agreement provided, “ Buyers to furnish marking and shipping instructions in ample time to permit of delivery when desired; and also to furnish G. O. C. permit in order to secure free lighterage to *116 steamer.” It is alleged that at the time of the making of the agreement both plaintiff and defendant well knew and understood that the letters and words “ F. A. S. New York ” meant “ free alongside steamer at the Port of New York.” It is then alleged that in the month of August, 1919, defendant furnished the plaintiff with marking and shipping instructions and G. 0. C. permit in respect to 161 barrels of raw linseed oil, which were duly delivered and paid for; that on or about September 2, 1919, a further agreement was made between the parties whereby the time for delivery of the remaining undelivered 89 barrels of off under the August shipment was postponed to the month of September, 1919, upon all the terms and conditions of the original agreement; and that during the month of September, 1919, defendant furnished the plaintiff with marking and shipping instructions and G. 0. C. permit respecting 20 barrels of oil, which were duly delivered and paid for. It is further alleged:
“ VIII. That defendant has wholly failed and refused to furnish any marking and shipping instructions and any G. O. C. permit except as aforesaid, and has refused to accept from the plaintiff any barrels of raw linseed oil except as aforesaid.
“ IX. That at all times the plaintiff was ready, willing and able to perform all the terms and conditions of said Exhibit A, [being the agreement in question] and has performed all of the conditions of said agreement on its part.”
It is then averred that plaintiff’s damage is in the sum of $6,380.
The second cause of action is based upon a similar agreement in writing, dated July 12, 1919, whereby plaintiff sold to defendant, and defendant bought from plaintiff, 600 barrels of pure linseed oil, fair average quality, packed in the usual barrels suitable for export, containing about fifty gallons each, 300 barrels to be shipped during August, 1919, and remainder during September, 1919, at the price of tw<j dollars and seventeen cents ($2.17) per gallon, basis raw, with the usual differential of two and three cents per gallon as in the first contract; terms “ F. A. S. New York. Net cash in exchange for dock receipt by means of thirty (30) day trade acceptance. Draw-back papers to be delivered to the sellers *117 when received.” Under the head of “ remarks ” it was provided: “ Buyers to furnish marking and shipping instructions in ample time to permit of delivery when desired; and also furnish G. 0. C. permit in order to secure free lighterage to steamer.” It is then alleged that the plaintiff was ready, willing and able to perform all the terms and conditions of the said agreement and did perform all the conditions thereof on its part, but that defendant wholly failed and refused to furnish any marking or shipping instructions and G. 0. C. permit in respect to any of the said barrels of oil mentioned in the second agreement, by reason of all of which plaintiff has been damaged in the sum of $13,500.
The answer admits the making of the agreements in question; admits that both parties knew and understood the meaning of the words “F. A. S. New York” to be as alleged in the complaint, and denies the rest of the allegations of the complaint, except the incorporation of the plaintiff. The complaint was dismissed upon the pleadings after the case had been opened to the jury by counsel for both plaintiff and defendant, upon the ground that it failed to state a cause of action in two particulars, first, in that it failed to allege tender by the plaintiff to defendant and did not set forth any breach or any other cause why tender was excused, and secondly, upon the ground that the complaint failed to allege any breach by defendant.
I am of the opinion that the dismissal by the learned trial court was erroneous and that the case relied upon by it to support its ruling is not in point.
These contracts provide for the sale of pure linseed oil of fair average quality at an agreed price, depending upon whether the oil delivered was raw, single boiled or double boiled. The contract is silent as to which party was to determine the condition of the oil to be delivered, whether raw, single boiled or double boiled. There is no issue tendered as to any ambiguity in the contract, nor is its reformation sought, and it seems to me, therefore, that as there is no suggestion that this oil had to be specially refined or prepared to meet the terms of the contract or the requirements of the defendant, the vendor would have the right to tender oil of fair average quality in any one of these three conditions, *118 and would thus have satisfied the requirements of the contract. We have, therefore, the case of a contract, providing for the delivery of specified goods of a definite quality free alongside steamer at the port of New York, with the duty imposed upon the buyer, under the explicit terms of both contracts, to furnish marking and shipping instructions in ample time to permit of delivery when desired and also to furnish a permit in order' to secure free lighterage to the steamer. The delivery when desired was, of course, to be in the months of August and September, 1919, as specifically provided by both agreements. It seems to me clear under these contracts that an absolute duty devolved upon the defendant, as vendee, to give the plaintiff the necessary shipping instructions before plaintiff was called upon to do anything under the contracts, and that the failure to give such instructions in time for delivery within the period limited by the contracts was a breach thereof by the defendant entitling the plaintiff to damages. This is not a case where the vendor could have complied with the terms of the contract by shipping the goods to the vendee at its place of business, or by placing them upon freight cars at the city of New York, subject to the vendee’s order. The delivery was to be free alongside steamer in the port of New York. With steamers leaving that port for almost every quarter of the globe, it becomes apparent that there was neither right nor liberty of selection upon the part of the vendor which would have entitled it to deliver the goods or tender them alongside any steamer in that port which it might select. There could not even be an attempt •made to tender or deliver the oil until the vendee had performed its duty under the contract of specifying the steamer at which delivery was to be made. There was a further duty upon the part of the defendant to furnish a permit that free lighterage might be secured to the steamer. These duties upon the part of the defendant were absolute and existed irrespective of any action on the part of the plaintiff and were precedent to any act required to be done by plaintiff under the contract.
This case, it seems to me, comes within the rule laid down in Williston on Sales (at p. 784): “ Generally where the buyer or seller is entitled to notice before performing, the *119 notice is not simply a condition qualifying his obligation but it is also a legal duty of the other party to give such notice within a reasonable time. Accordingly, if the notice is not given, not simply is the party who should receive it excused from performing but he has a right of action against the party who should have given it.” Among the cases cited by Williston in support of this general proposition is Kingman & Co. v. Hanna Wagon Co. (176 111. 546; 52 N. E. Rep. 328), where the seller agreed to sell a large number of wagons to be delivered monthly “ as ordered ” by the buyer; the failure of the vendee to order the number specified in the contract was held to give the seller a right of action without the necessity of making a tender.
The defendant does not contend that it was incumbent upon plaintiff to allege physical tender of the oil, but that it must allege that it tendered or offered to perform, and demanded per-' formance by defendant. In support of this contention defendant cites the case of British Aluminum Co., Limited, v. Trefts (163 App. Div. 184) which was the authority relied upon by the learned trial court in granting the motion to dismiss. That case, in my opinion, is clearly distinguishable from the case at bar. Therein, the contract was one for the sale by the plaintiff of twenty-five tons of British ingot aluminum, 98-99 per cent pure, at 22%c per pound, delivery f. o. b. New York, shipment as specified by the buyer to be in October, 1910, and April, 1911, payment 15 days from date of invoice. The provision as to shipment was modified by mutual agreement by substituting December 31, 1911, as the final date for delivery. The defendant in that case never requested delivery of the thirteen tons of aluminum still undelivered and plaintiff contended that it was under no obligation to deliver or tender delivery until defendant specified the time therefor. This court held, however, that the parties did not undertake that the vendor need not ship the goods until it received shipping directions from the vendee; that the provisions for earlier shipment than the final date were for the benefit of the vendee and he was not required to give shipping instructions essential to enable the vendor to make delivery, but only to specify dates for delivery in so far as he might desire the same before the final date; that, therefore, the vendor had the right, and it *120 was its duty, to deliver or tender delivery of the remaining aluminum before December 31, 1911, for the legal effect of the contract was to call for delivery thereof on that day. As Mr. Justice Laughlin said at page 188: “ The vendor needed no shipping instructions to enable it to deliver the aluminum, which was to be consigned to the defendant at Buffalo and to be delivered f. o. b. at the city of New York, and if it did it should have asked for them if it desired to perform and put the vendee in default.” The latter clause was not essential to the'opinion. It is based on the authority of Gordon Malting Co., v. Hartels Brewing Co. (206 N. Y. 528), which is authority for the proposition that where the vendor has asked for shipping instructions and they have not been furnished by the vendee the breach is complete. But it does not hold that there cannot be a breach due to the vendee’s failure to furnish shipping instructions where he has specifically agreed to furnish the same within a designated time and where delivery cannot possibly be made without such instructions. The British Aluminum case was one in which, as Mr. Justice Laughlin points out, the vendor if it desired to enforce the contract was at liberty without waiting for any request for delivery or shipping instructions from the vendee to deliver the aluminum f. o. b. New York city consigned to the vendee at Buffalo, and that right it could exercise up to the time fixed for the fulfillment' of the contract; wherefore the failure of the vendee to demand delivery did not excuse the vendor from tendering delivery inasmuch as it had a plain, unequivocal and direct way of performing the contract before its termination by time limit and a corresponding duty so to act.
In the instant case, however, the facts are entirely different, for, as has been, pointed out, the plaintiff could not deliver, or tender delivery, of the goods contracted to be sold, until the defendant had designated the steamer in the port of New York alongside of which they were to be delivered. The duty of delivery or a tender of delivery and the duty of furnishing shipping instructions were, therefore, not concurrent duties, but the plaintiff’s duty to make tender of delivery was dependent upon the defendant’s first furnishing the shipping instructions. Its failure to furnish the same *121 constituted a breach of the contract for which the plaintiff can recover.
The judgment appealed from will, therefore, be reversed and a new trial ordered, with costs to appellant to abide the event.
Clarke, P. J., Laughlin, Smith and Page, JJ., concur.
Judgment reversed and new trial ordered, with costs to appellant to abide event.