## BISBEE LINSEED CORPORATION v. PARAGON PAINT & VARNISH CORPORATION.

### No. 278.

Circuit Court of Appeals, Second Circuit.
April 18, 1938.

Lyon, Lee & Lyon, of New York City (Robert B. Ely, III, of Philadelphia, Pa., and Herbert B. Lee and Walter S. Buck, both of New York City, of counsel), for appellant.

I. Gainsburg, of New York City (Harold I. Cohen, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment dismissing a complaint for failure of proof in an action to recover damages for the nonacceptance of a quantity of linseed oil under a contract of sale. The plaintiff, the seller, had sued once before upon the same contract in a complaint in two counts: The first, for the purchase price of a part of the oil delivered under the contract; the second, for the same damages now at issue. It recovered upon both counts in the District Court, but the defendant appealed from the judgment upon the second count, which was reversed. Bisbee Linseed Co. v. Paragon Paint & Varnish Corp., 2 Cir., 66 F.2d 595. On remittitur of our mandate, the judgment upon both counts was reduced so as to include only the recovery on the first count, and the complaint upon the second count was dismissed. The action at bar followed on a complaint which was in substance the same as the second count in the first action, later amended without substantial change. It was dismissed upon the first trial because the judgment in the first action was considered res judicata; we disagreed and sent the case back for trial. Bisbee Linseed Co. v. Paragon Paint & Varnish Corp., 2 Cir., 89 F.2d 18. The case now comes before us a third time after a trial upon the merits, which the judge concluded by a directed verdict for the defendant, the buyer.

The contract on which the action arose was executed on September 27, 1929. In it the seller agreed to sell, and the buyer to buy, 840 barrels (375 pounds each) of pure linseed oil at 15.3 cents a pound. The shipment was to be of three cars (210 barrels) in each of the four months, April to July, 1930, inclusive; "the Buyer to furnish written specifications for shipment to Seller * * * in ample time to enable Seller to execute order within the * * * periods above mentioned. * * * In the absence of such specifications a carrying charge of 25 cents per 375 pounds per month * * * shall accrue for such time as Seller shall be willing to carry same. * * * In case of default in payment of any installment of purchase price when due, or in case the credit of the Buyer become unsatisfactory to the Seller, the whole sum owing to the Buyer shall become due and payable at once, and the Seller shall make all further deliveries, but for cash only." The buyer appears never to have given any specifications, but in some way its willingness must have been known to the seller, for 299 of the 840 barrels had been delivered and accepted by August 2, 125 more were delivered in that month and 63 in September, leaving 353 to follow. The defendant offered evidence to prove that in that month the seller had refused to deliver except for cash, and that it had for this reason repudiated the contract in a letter of September 19th, which the plaintiff denied receiving. No further deliveries were made until January; in that month, as well as in February and March, the buyer accepted several parcels, and paid for all of them except the last, that of March 14th, the price of which was recovered by the judgment upon the first count in the first action. When the defendant failed to pay for this parcel, and alleged that there had been shortages in the earlier deliveries, the parties had a conference some time in April which the defendant's president concluded by unequivocally repudiating any further obligation. The plaintiff did not tender the remaining oil; it wrote letters to the buyer in April 9th, 14th, and

20th, urging it to fix a time for delivery, to none of which the buyer replied. We cannot find out just when the conference took place, but apparently it was not later than the 20th; at any rate, the letter of that day declared that the seller would "carry" the oil no longer, but would sell it on the 27th for the buyer's account, and another letter followed on the 24th to the same effect. The seller did not in fact sell on the 27th; instead it wrote still another letter on May 1, followed by a wire, saying that it would sell on the next day. Linseed oil is merely the oil expressed from flaxseed, and the duty of the seller to "carry" the oil was as well filled by carrying flaxseed, as by carrying the oil itself. By competent evidence the seller proved that in addition to its other commitments it had always kept on hand—"carried"—enough flaxseed throughout the period in question (from April, 1930, to May, 1931) to fill the undelivered part of the parcel here at issue. On May 2 it sold this to the Westproof Paint & Varnish Company at 8.3 cents a pound for July delivery, and in reckoning its damages, it subtracted the amount received upon that contract from the contract price.

The defendant argues that the contract was at an end before the date of its repudiation in April, 1931, because on July 31, 1930, when the original four months expired, the seller lost any privilege to tender the oil; but that if, due to its own acceptance of deliveries in August and September, it was revived, the seller's declaration that it would in the future deliver only for cash was a breach which justified its own repudiation on September 19th. Then at least, it insists, the contract came to an end, and the subsequent deliveries on and before March 14, 1931, did not revive it; they were independent arrangements unrelated to the original. Thus, it urges, the repudiation of April, 1931, was not a repudiation at all, but merely an announcement that the buyer did not care to resume any further dealing in oil. The judge considered that, as no tender was made before April 1, the seller had not performed, even though the contract was extended through the first three months of 1931, as alleged in the amended complaint. For this reason he directed a verdict for the defendant.

We need not consider whether the contract ended in September, 1930, or in what way it was extended. By virtue of the judgment upon the first count of the complaint in the first action it became res judicata that on March 14, 1931, it was still in existence. Wilson's Ex'r v. Deen, 121 U.S. 525, 7 S.Ct. 1004, 30 L.Ed. 980; Fayerweather v. Ritch, 195 U.S. 276, 25 S.Ct. 58, 49 L.Ed. 193. The first count had demanded the price of the oil as fixed by the contract, whose continued existence until then was therefore a necessary condition to the recovery, and was forever established as between the parties. If so, the seller was entitled after March 14, 1931, to "carry" the remainder of the oil "for such time as Seller shall be willing to carry same." We may assume arguendo that there was a reasonable limit to this privilege, though clearly it extended for six weeks. The amended complaint did indeed allege that the contract was only extended through March, 1931, but that meant that the buyer was to fix the time and place for delivery before then; it did not mean that its duties ended at that time. They did not; the provision for carrying the oil forbade such an interpretation; if the buyer continued not to speak, the seller might tender the oil when it tired of "carrying" it, and charge the buyer with the damages. Midland Linseed Products Co. v. Viall, 213 App.Div. 92, 209 N.Y.S. 572. British Aluminium Co., Ltd., v. Trefts, 163 App.Div. 184, 148 N.Y.S. 144, is not to the contrary; it reserved the question as to whether the seller might not tender after the original period had expired; moreover, the contract contained no provision for "carrying," as did that at bar and that in Midland Linseed Products Co. v. Viall, supra. It is true that in Bisbee Linseed Co. v. Paragon Paint & Varnish Corp., 2 Cir., 66 F.2d 595, we held that the seller might not dispense with tendering the oil because of the buyer's failure to specify; it could recover its carrying charges, but not any damages for refusing to accept. We said this because we construed the specification as only in the buyer's interest, and not as necessary to the seller's performance. We then had nothing before us except the complaint, but now it appears that the buyer repudiated the contract in April, 1931, while the seller was lawfully "carrying" the oil and still might tender it. That repudiation not only excused the tender, but was itself a breach (Restatement of Contracts, § 318), though the seller was not obliged to treat it as such.

Landes v. Klopstock, 2 Cir., 252 F. 89. It did not do so; it kept urging the buyer to speak, perhaps assuming that it was not bound to tender until it did. The buyer remaining mute, it declared the contract at an end, and sought to fix its damages by a resale. Since the buyer had never retracted, its repudiation remained a standing excuse for the seller's performance of the condition—tender—upon the buyer's duty to accept, and the buyer was therefore guilty of a breach for nonacceptance as soon as the time for acceptance arrived. That came when the seller ceased to be "willing to carry" the oil any longer; it fixed that time, as it might do, at May second.

The method of fixing damages was however wrong. No title to the oil had passed, and as there appears to have been an "available market" for it, the situation was within subdivision 3 of section 145 of the New York Personal Property Law, Consol.Laws, c. 41, and the damages were the difference between the contract price and the market price. Had the seller sold "spot" oil to the Waterproof Paint & Varnish Company, we need not say the contract price would not have been some evidence of market price on May 2. It did not do so; it sold for July delivery, and that price was no evidence of the market two months earlier without more. Frankel v. Foreman, 2 Cir., 33 F.2d 83. Silverman, the defendant's president, had indeed sworn on the first trial that the market value of oil on May 2 was 9 cents, and that may have been an admission; but his testimony was offered in evidence in the case at bar only to explain the scope of the estoppel, and could not have been used to bolster up the proof of damages. Strictly, therefore, there was no proof of damages for nonacceptance. However, since the carrying charges should in any event have been recovered, it was wrong to dismiss the complaint, and the other item can no doubt be proved at the next, and we hope the last, trial. Unless the evidence then changes, the only issue for the jury will be the market value of oil on May 2, 1931. Finally, we should like to observe that in all but very plain cases it is always desirable for the judge to take a verdict and reserve decision upon any motion to dismiss. This course usually avoids the necessity of a new trial, though it must be owned that it would probably not have done so here. Baltimore & Caro-

lina Line v. Redman, 295 U.S. 654, 55 S. Ct. 890, 79 L.Ed. 1636; Skelley v. New York, N. H. & H. R. Co., 2 Cir., 93 F.2d 479, 481.

Judgment reversed; new trial ordered.